On Application for Rehearing
The opinion of July 24, 1998, is withdrawn and the following opinion is substituted therefor.
Robert A. Robicheaux (the "husband") and Cynthia G. Robicheaux (the "wife") were married in 1970. In November 1996, the parties separated. The wife sued for a legal separation on February 7, 1997 (case number DR-97-114. The husband petitioned for a divorce a mensa et thoro (from bed and board) on February 18, 1997 (case number DR-97-150). The wife later amended her complaint to request an absolute divorce The cases were consolidated, and the trial court issued a judgment of divorce in August 1997.
That judgment awards the wife 50% of the husband's "Teacher's Insurance and Annuity Association, College Retirement Equities Fund" (TIAA-CREF) retirement accounts and 60% of his "Self-Employed Profit Sharing Account" at Regions Bank (the "Regions account"). The trial court entered a "qualified domestic relations order" (QDRO)[1] for both the TIAA-CREF accounts and the Regions account to effectuate the division of the husband's retirement accounts. The husband appeals, arguing that the trial court's award does not comply with Ala. Code 1975, § 30-2-51. We affirm.
Because the husband and wife disagree over the interpretation of § 30-2-51, we must "ascertain and effectuate legislative intent as expressed in the statute."Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala. 1984). To do so, we must first focus our attention on the language of the statute and effectuate the intent clearly expressed therein if the language is unambiguous.City of Hartselle, 460 So.2d at 1223. The language in the statute must be given its "natural, plain, ordinary, and commonly understood meaning." Id (citation omitted).
The husband argues that the trial court's QDRO's do not comply with § 30-2-51 (e). Subsection (c) reads:
 "If the court finds in its discretion that any of the covered spouse's retirement benefits should be distributed to the non-covered spouse, the amount is not payable to the non-covered spouse until the covered spouse begins to receive his or her retirement benefits or reaches the age of 65 years, unless both parties agree to a lump sum settlement of the non-covered spouse's benefits payable in one or more installments."
The husband points out that, pursuant to the provision of the TIAA-CREF retirement plan, the wife is eligible to receive her share of his retirement benefits at the time the benefits are divided. This, he contends, violates the provisions of subsection (c) because the retirement benefits are payable to the wifebefore the husband retires or reaches age 65. Therefore, he argues, the trial court has violated the statute by awarding the wife 50% of his retirement benefits. However, it is not the trial court's judgment, but the provision in the husband's retirement plan that allows the wife the option to receive her share of the husband's retirement benefits *Page 1224 
early.[2] The trial court committed no error in dividing the TIAA-CREF accounts.
As for the Regions account, the record does not reflect that the wife can receive the monies awarded to her before the husband retires. In fact, nothing about the Regions account, besides references to its existence, appears in the record. The husband, who has the burden of demonstrating how the trial court erred, has failed to demonstrate how the trial court's QDRO pertaining to the Regions account is in error. See Hoffmanv. Forman, 689 So.2d 874, 875 (Ala.Civ.App. 1996).
The husband also argues that the trial court erred in valuing his retirement benefits on the date of the divorce judgment instead of on the date of the filing of the complaint for divorce. The husband argues that the language of § 30-2-51 (b) supports his contention that the retirement benefits are to be valued at the time of the filing of the complaint. The pertinent portion of subsection (b) reads as follows:
 "The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed. . . ."
(Emphasis added.) The wife argues that the emphasized portion of subsection (b) does not modify "present value," but instead modifies the phrases "may have a vested interest in" and "may be receiving." We agree. Subsection (b) requires that, for a trial judge to consider including retirement benefits in the estate of a spouse, the spouse must, at the time the divorce was filed, either have been receiving those benefits or have had a vested interest in them. The statute does not indicate when the present value of the retirement benefits is to be determined. Therefore, the trial court did not err by valuing the husband's retirement benefits as of the date of the divorce.
The wife's brief raises an additional issue concerning the trial court's failure to award her certain of her husband's other retirement benefits; however, the wife did not perfect a cross-appeal under Rule 4 (a)(2). Therefore, we will not address the issue she raises. Metro Bank v. Henderson'sBuilders Supply Co., 613 So.2d 339, 340 (Ala. 1993).
Each party requests an attorney fee on appeal; the requests are denied.
OPINION OF JULY 24, 1998, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; RULE 39 (k) MOTION DENIED; AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
[1] "A qualified domestic relations order is defined [in the Employee Retirement Income Security Act of 1974 ERISA)] at29 U.S.C.A. § 1056 (d)(3)(B)(i) and provides that the alternate payee can be assigned the right to receive all or a portion of the benefits payable to a participant under a plan `only if such order does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan.'"Johnson v. Johnson, 541 So.2d 554, 555 (Ala.Civ.App. 1989) (quoting 29 U.S.C.A. § 1056 (d)(3)(D)(i)).
[2] A document entitled "TIAA and CREF's Annuity Splitting Process, contained in the record, states: "annuity income typically begins after termination of employment the non-trial participant spouse will be considered to have satisfied that requirement and be eligible to begin annuity income at any time."