964 So.2d 663 (2005)
Robert Burton SMITH
v.
Brenda Kay Hall SMITH.
Brenda Kay Hall Smith
v.
Robert Burton Smith.
2040310.
Court of Civil Appeals of Alabama.
December 9, 2005.
Rehearing Denied May 19, 2006.
Certiorari Denied April 13, 2007.
*665 Phyllis J. Logsdon, Dothan, for appellant/cross-appellee Robert Burton Smith.
J.E. Sawyer, Jr., Enterprise, for appellee/cross-appellant Brenda Kay Hall Smith.
Alabama Supreme Court 1051246.
MURDOCK, Judge.
Robert Burton Smith, the husband, appeals and Brenda Kay Hall Smith, the wife, cross-appeals from a divorce judgment entered by the Houston Circuit Court.[1]
The husband and the wife married in 1990. They have one child, a son who was born in July 1998.
In January 2003, the wife filed a complaint in the Houston Circuit Court requesting the entry of a judgment legally separating her from the husband. See Ala.Code 1975, § 30-2-40. In her complaint, the wife alleged that the parties continued to reside in the same dwelling, but she stated that they had "physically *666 separated from each other and no longer live together as husband and wife." The wife requested a legal separation on the grounds of "irretrievable breakdown" and "complete incompatibility of temperament," requested custody of the parties' child, and requested awards of marital property and alimony.[2]
In February 2003, the husband filed an answer and a counterclaim requesting that the circuit court enter an order divorcing the parties on the ground of incompatibility of temperament. The husband requested that the circuit court award him custody of the parties child and that it equitably divide the marital property.
After ore tenus proceedings, the trial court entered an order in February 2004 entitled "Final Judgment of Divorce." The February 2004 order cited "incompatibility of temperament" as the ground for the parties' divorce. The order also awarded the parties "joint custody" of their son, with the husband having "primary care, custody, and control" of the child. The child was to reside with the husband during the school year, subject to the wife's visitation rights, and the child was to reside with the wife during the summer, subject to the husband's visitation rights. Also, in the February 2004 order, the circuit court addressed the division of some, but not all, of the parties' assets and debt and it set the matter of the division of the parties' retirement benefits for a future hearing. The wife filed a notice of appeal from the February 2004 order.[3]
While the wife's appeal was pending, and after additional hearings, the circuit court entered a "Final Order" in November 2004 addressing the remaining issues between the parties, including the division of the husband's retirement benefits and the amount of the wife's child-support obligation. Paragraph 1 of the November 2004 order states that the parties
"shall equally divide the following accounts that are solely in [the husband's] name, to include, but not limited to the following:
"a. Snecma Savings Plan [a 401k retirement account] with a balance of $188,722.02 (as reported on a Wells Fargo statement reflecting an account number of ____).
"b. Snecma Retirement Account Plan with a balance of $11,924.56 (as reported on a Wells Fargo statement reflecting an account number of ____).
"c. Account identified as `TRW' account (p. 71 of trial transcript and p. 148 of court record) with a balance of $31,912.07.1
"d. Labinal Retirement Account Plan and/or Labinal Inc. Savings Plan through Defendant's employment with Globe Motors.1
"e. Merrill Lynch Roth IRA account number ______ with a balance of $42,259.00 (said funds held in the trust account of [the husband's attorney]).[[4]]
"1 In the event said account has not been rolled over into another account already addressed by this Court Order, then said account is subject to an equal division between the parties."
The husband filed a motion for a new trial alleging that the circuit court's division *667 of his retirement benefits was in error for various reasons. After holding a hearing on the husband's motion, the circuit court entered an order in December 2004 denying the husband's motion for a new trial and modifying the November 2004 order to add the following language: "The burden of proof to show both the existence of the accounts alleged in Paragraph 1(c) and 1(d) and the amounts accrued in said accounts during the pendency of the marriage rests with the [wife]." The husband filed a notice of appeal.
In February 2005, after this court initially addressed the procedural deficiencies of the parties' appeals and reinvested the circuit court with jurisdiction, see note 1, supra, the circuit court entered a "Final Order" "redating" and "making final" the aforementioned February 2004 and November 2004 orders.[5] The husband filed a motion for a new trial, again alleging that the circuit court's division of his retirement benefits was in error for various reasons. The circuit court denied the motion.
On appeal, the husband contends that the circuit court erred as to its retirement-benefits award. The wife contends that the circuit court erred by not finding that the ground for the parties' divorce was the husband's adultery and that it erred by awarding the husband custody of the parties' child because he committed adultery.
Regarding the wife's argument that the trial court erred by not granting the divorce on the ground of adultery, the evidence indicates the following. The wife initially threatened to divorce the husband in the summer of 2002, but the parties apparently reconciled. There is no evidence indicating that the wife's threat to divorce the husband was based on any relationship the husband might have had with another woman. The husband broached the subject of divorce with the wife in November 2002, and the wife testified that the parties thereafter "separated," i.e., stopped living as husband and wife. The wife argues that, based on her testimony, the husband's behavior in November 2002 suggested that he already had a sexual relationship with his paramour and that the circuit court should have concluded that adultery was the ground for the parties' divorce. However, the husband and his paramour, who was employed by the same employer as the husband, testified that in November 2002 they were only friends and that they did not begin a sexual relationship until after the parties had "separated." Also, the circuit court received testimony that would support a finding that as of November 2002 the parties already had an acrimonious relationship, in part, due to the demanding and immature character of the wife.
Based upon our standard of review under the ore tenus rule and the conflicting testimony received by the circuit court, we cannot conclude that the circuit court erred by not finding that adultery was the *668 ground for the parties' divorce; nor can we conclude that the circuit court erred when it determined that the divorce should be granted on the ground of incompatibility of temperament. See, e.g., Martin v. Martin, 623 So.2d 1167, 1169 (Ala.Civ.App. 1993).
Furthermore, as to the wife's contention that the circuit court failed to properly consider the husband's postseparation adultery (which was not the cause of the parties' divorce) when it awarded him primary physical custody of the parties' son, we do not believe that it is necessary to recite in detail the evidence that supports the circuit court's custody award. We have carefully reviewed the record, and we cannot conclude that the circuit court's custody award is plainly and palpably wrong or that, under the circumstances, it failed to properly consider the husband's postseparation affair.[6] Accordingly, as to the wife's cross-appeal, the circuit court's judgment is due to be affirmed.
The husband contends that the circuit court's division of his retirement benefits is in error for several reasons. Some of the husband's reasons are without merit. However, we agree that the evidence would not support a finding that the husband's "Labinal Retirement Account Plan and/or Labinal Inc. Savings Plan" was still in existence when the complaint for divorce was filed. Likewise, we agree that the wife failed to present evidence to support the circuit court's retirement-benefits awards as to his Snecma 401k Savings Plan, his Snecma Retirement Account Plan, his TRW account, and his Merrill Lynch Roth IRA.
Section 30-2-51(b), Ala.Code 1975, states:
"(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
"(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.

*669 "(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
"(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
See also Smith v. Smith, 836 So.2d 893 (Ala.Civ.App.2002).
Although the husband's retirement accounts contained the vast majority of the assets that were acquired during the parties' 13-year marriage,[7] the record reflects that the husband's Snecma 401k Savings Plan, his Snecma Retirement Account Plan, and his TRW account all contained some retirement benefits acquired before the parties' marriage. Except for the Snecma 401k Savings Plan, which had a value of approximately $8,000 when the parties married, the wife presented no evidence of the value of the retirement benefits in the husband's retirement accounts when the parties' married, i.e., the value of the retirement benefits acquired before the marriage. See Ala.Code 1975, § 30-2-51(b)(2). Also, as to the Snecma 401k Savings Plan, the Snecma Retirement Account Plan, and the TRW account, the wife presented no evidence of the interest or appreciation on the premarriage benefits that accrued after the date of the parties marriage. See id. Furthermore, as to the Snecma 401k Savings Plan and the Snecma Retirement Account Plan, which the husband and his employer continued to contribute to after the complaint for divorce was filed,[8] the wife presented no evidence of the value of the retirement benefits in those accounts in which the husband had a vested interest "on the date the action for divorce [was] filed"; as to those accounts the only evidence of the value that the husband had a vested interest in was the value at the time of trial or a few months before trial. In other words, the circuit court's retirement-benefits award contains premarriage retirement benefits, and income and appreciation thereon, and postcomplaint retirement benefits, and income and appreciation thereon, in violation of § 30-2-51(b). See Ala.Code 1975, § 30-2-51(b)(2) (regarding retirement benefits accruing before marriage, and interest and appreciation thereon); see also Killingsworth v. Killingsworth, 925 So.2d 977, 982 (Ala.Civ.App. 2005) (Retirement benefits "earned after the filing of the divorce action . . . do not constitute vested benefits subject to division under § 30-2-51."); Wilkinson v. Wilkinson, 905 So.2d 1, 5 (Ala.Civ.App. 2004) (Murdock, J., concurring specially) ("If the judgment . . . had simply awarded a percentage of whatever benefits were vested in the husband as of the date of the filing of the complaint for divorce (along with any subsequent interest on or appreciation in value of those vested benefits), the judgment would have been in compliance with the first sentence of § 30-2-51(b).")
Also, as to the husband's Merrill Lynch Roth IRA, the record would only support a finding that it contained premarriage retirement benefits and interest and appreciation thereon. However, in December 2002 the husband liquidated the *670 Merrill Lynch Roth IRA with the intent of paying off a loan that he had taken from his Snecma 401k Savings Plan in the summer of 2002; the proceeds from the loan had been used to build the marital residence and to pay some living expenses incurred before January 2003. After the wife filed her complaint, the husband did not use the funds from the liquidated IRA to pay off the Snecma 401k Savings Plan loan, nor did he roll the funds over into another retirement account. Instead, the husband delivered the funds from the liquidated IRA to his attorney, who thereafter held them in her trust account. Because the husband liquidated the Merrill Lynch Roth IRA before the complaint for divorce was filed, and because the funds were not thereafter rolled over into a retirement account or otherwise held as retirement benefits "on the date the action for divorce [was] filed," the funds from the liquidated IRA did not constitute retirement benefits governed by the provisions of § 30-2-51(b). Instead, the funds from the liquidated IRA were governed by § 30-2-51(a).
Section 30-2-51(a) authorizes a trial court to consider property acquired before marriage in dividing the marital estate only when such property "has been used regularly for the common benefit of the parties during their marriage." The wife presented no evidence indicating that the funds from the liquidated IRA, or the income therefrom, was "used regularly for the common benefit of the parties during their marriage." The only indication in the record as to the use of the liquidated IRA funds is that the husband obtained a court order allowing him to obtain $10,000 from the funds during the pendency of the divorce proceedings.
In response to the husband's arguments, the wife contends that the circuit court's division of the husband's retirement accounts is due to be affirmed because, she asserts, during the marriage he allegedly withdrew funds from or took loans against some of the retirement accounts at issue and then allegedly used the proceeds for the benefit of the parties. She argues that such retirement accounts thus no longer fell within the provisions of § 30-2-51(b), but instead fell within the provisions of § 30-2-51(a), which states:
"If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."
For the reasons hereinafter discussed, we conclude that the wife's argument is without merit.
This court must construe a statute based on its plain language, and when we must decide
"`between alternative meanings . . ., we will not only consider the results that flow from assigning one meaning over another, but will also presume that the legislature intended a rational result, one that advances the legislative purpose in adopting the legislation, that is "workable and fair," and that is consistent with related statutory provisions.'"
Ex parte Berryhill, 801 So.2d 7, 10 (Ala. 2001) (quoting John Deere Co. v. Gamble, 523 So.2d 95, 100 (Ala.1988)). "As we must with any statute, we read the concept *671 of reasonableness into the provisions of the statute at issue in this case." Ex parte Berryhill, 801 So.2d at 10.
Section 30-2-51(b) was enacted by our legislature in 1995, see Act No. 95-549, Ala. Acts 1995, and now governs the division of retirement benefits. It contains no provision authorizing a trial court to consider retirement benefits as marital property based on the use of the benefits during the marriage. Instead, the inclusion of particular retirement benefits as marital property depends exclusively on the vesting of the benefits, the length of the marriage, and when the benefits were accumulated. Ala.Code. 1975, § 30-2-51(b); Smith, supra.
In contrast to the foregoing understanding of § 30-2-51, the wife's argument suggests an understanding of § 30-2-51 that leads to irrational results that we cannot conclude were intended by our legislature. See Ex parte Berryhill, supra. For example, based on the wife's understanding of § 30-2-51, one alternative reading of § 30-2-51(a) is that a trial court could award a spouse the entire retirement account of the other spouse where the latter spouse used premarriage retirement benefits from the retirement account for the common benefit of the parties during the marriage; however, under § 30-2-51(b)(3) the trial court could not award a spouse more than 50% of a retirement account accrued solely during the parties marriage, even though the spouse who owned the account had used retirement benefits accrued during the marriage for the common benefit of the parties during the marriage. In other words, this court would have to conclude that retirement benefits accrued during the marriage, and that are used for the common benefit of the parties, are subject to the 50% award limitation of § 30-2-51(b)(3), but that retirement benefits accrued before the marriage, and that are used for the common benefit of the parties, could be awarded in their entirety to the other spouse pursuant to the last sentence of § 30-2-51(a).
A second alternative reading under the wife's argument is that the legislature intended § 30-2-51(a) to override § 30-2-51(b) entirely when retirement benefits have been used for the common benefit of the parties. Thus a spouse would have to ensure that his or her retirement benefits are not used for the common benefit of the parties during the marriage (regardless of when the benefits were accumulated), or else that spouse would risk the inclusion of all of the retirement account at issue in the marital estate under § 30-2-51(a). This would mean that the legislature intended § 30-2-51(b) to apply only to retirement benefits accrued during the marriage that have not been used for the common benefit of the parties.
There are two obvious objections to such a reading of § 30-2-51(b). First, it does not plainly say that it was intended to apply to only a selected class of retirement benefits accumulated during the marriage, i.e., those not used for the benefit of the parties. See IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992) ("Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says."). Second, § 30-2-51(b) clearly states that an award can be made from a retirement account as to which the earning spouse "may be receiving [benefits] on the date the action for divorce is filed." We cannot conclude that the legislature, on the one hand, effectively built into the statute an incentive for spouses to hoard their retirement benefits from one another (i.e., to not begin receiving their retirement benefits during the marriage) *672 so as to avoid the application of § 30-2-51(a), while it simultaneously provided in § 30-2-51(b) for the inclusion in the marital estate of up to 50% of any retirement benefits accrued during marriage, regardless of their use.
Based on the foregoing, the circuit court's judgment is due to be reversed as to the award to the wife of one-half of the retirement benefits from the husband's Snecma 401k Savings Plan, his Snecma Retirement Account Plan, his TRW account, his Labinal Retirement Account Plan and/or Labinal Inc. Savings Plan, and his Merrill Lynch Roth IRA. However, because the only relief that the husband requested from the circuit court in connection with the erroneous retirement-benefits awards was that he be granted a new trial, we must remand this cause to the circuit court for a new trial on the issue of the division of the husband's retirement accounts.
As to the ground for the parties' divorce and the custody award to the husband, the circuit court's judgment is affirmed. As to the award of the husband's retirement benefits, the judgment is reversed, and this cause is remanded for proceedings consistent with this opinion.
APPEAL  REVERSED AND REMANDED.
CROSS-APPEAL  AFFIRMED.
CRAWLEY, P.J., and THOMPSON, J., concur.
PITTMAN and BRYAN, JJ., concur in the result, without writing.
NOTES
[1] Initially, the wife filed an appeal from a February 2004 circuit-court order entitled "Final Judgment of Divorce" (appeal no. 2030733). However, the February 2004 order did not dispose of all of the issues between the parties. Specifically, the February 2004 order failed to designate the amount of child support that the wife must pay to the husband and it set the issue of the division of the parties' retirement benefits for a future hearing.

Before this court addressed appeal no. 2030733, the circuit court held additional hearings and it entered a "Final Order" in November 2004 that purported to address, among other things, the amount of the wife's child-support obligation and the division of the parties' retirement benefits. The husband filed a motion for a new trial. The circuit court denied the husband's motion. The husband appealed (appeal no. 2040310).
In February 2005, this court entered an order in appeal no. 2030733, dismissing that appeal as being from a nonfinal judgment. We simultaneously entered an order in appeal no. 2040310(1) that temporarily reinstated the circuit court's jurisdiction so that it could enter a final judgment and (2) that authorized the parties to raise the issues asserted in appeal no. 2030733 as part of the appeal in appeal no. 2040310. Thereafter, the circuit court entered a final judgment, and, upon motion of the parties, we entered orders incorporating both the record and the parties' briefs from appeal no. 2030733 into appeal no. 2040310.
[2] At trial, the wife argued, without objection, that she was seeking a divorce; she no longer desired only a legal separation from the husband.
[3] See note 1.
[4] The November 2004 order also divided other accounts owned by one or both of the parties. However, only the accounts described above are at issue.
[5] The circuit court did not "redate" and "make final" the December 2004 order modifying the November 2004 order. Had the circuit court incorporated its December 2004 modification order, which on its face reflects that the circuit court had not finally adjudicated the division of the two retirement accounts referred to in that order, the current appeal and cross-appeal would be due to be dismissed as being from a nonfinal judgment. See Deal v. Deal, 899 So.2d 1010, 1011 (Ala. Civ.App.2004). However, unlike the December 2004 order, the February 2005 judgment incorporates the language form the court's earlier November 2004 order and, as a consequence, purports to fully adjudicate the division of the husband's retirement accounts, without reference to the need for additional evidence regarding "the amounts accrued in said accounts during the pendency of the marriage."
[6] The Alabama Supreme Court has stated that in making a child-custody award, a trial court must consider and balance numerous factors. See Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981). The trial court must make the custody award that is in the best interest of the child. Price v. Price, 440 So.2d 1110, 1110 (Ala.Civ.App.1983). Also, in reviewing the trial court's custody award, this court must consider the unique position of the trial court to observe witnesses, see Ex parte Fann, 810 So.2d 631, 633 (Ala.2001), and we must "assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." McGough v. McGough, 710 So.2d 452, 453 (Ala.Civ.App.1997).

As to the reasons for the child-custody award in the current case, the February 2004 order states, in part:
"The Court recognizes that the child custody issue was very difficult and troubling. The Court in considering the best interest of the child took into consideration the fact that the [wife] threatened the [husband] regarding the son and unilaterally kept the son from the [husband] in violation of the Court's order. Additionally, testimony revealed that the [wife] was having a difficult time controlling her son. . . . Testimony also revealed that the [wife] and son would scream at each other."
The foregoing findings are supported by testimony received by the circuit court at trial. We also note that the wife admitted that she repeatedly failed to properly utilize a child-safety seat when she drove with the child in the car, and the record contains a picture of the wife "shooting the bird" at the camera while the child is watching in the rear seat of the car. There was also testimony that the wife was lacking in a normal "maternal temperament" and in "maternal instincts," and there was favorable evidence regarding the husband's parenting skills and his relationship with the child.
[7] The parties had little equity in the marital residence, and the other marital assets are not substantial in comparison to the husband's retirement accounts. Also, we note that the circuit court did not award the wife periodic alimony.
[8] The TRW account was a retirement account that the husband "rolled over" when TRW, his former employer, was purchased by a third party.