On Application for Rehearing

PITTMAN, Judge.
This court’s opinion of April 3, 2015, is withdrawn, and the following is substituted therefor.
Raleigh Levon Hill, Sr. (“the husband”), appeals from a judgment of the Madison Circuit Court (“the trial court”) divorcing him and Beverly Collier Hill (“the wife”) (1) insofar as that judgment awarded the wife a property settlement in the amount of $162,623.86, which, the trial court found, represented one-half of the husband’s net winnings from a lottery, and (2) insofar as it awarded the wife one-half of the value of the husband’s retirement account. We affirm.

Procedural History

In September 2011, approximately 23 years after the husband had left her and the parties’ three children on July 29, 1988, the wife sued the husband for (1) a divorce on the ground of abandonment and *1146 incompatibility, (2) a property settlement, and (3) a share of the husband’s retirement account.[1] Also in September 2011, the trial court entered its standing penden-te lite order, which, among other things, ordered the parties to preserve their assets in the form in which they existed upon the entry of the pendente lite order. The husband was served with process on October 1, 2011. Answering, the husband asserted (1) that he had divorced the -wife in 2002 by means of a purported divorce judgment he had procured over the Internet from a Mexican court (“the purported Mexican divorce”), which, he said, deprived the trial court of subject-matter jurisdiction over the wife’s action, and (2) that the wife’s claims were barred by the doctrines of equitable estoppel and laches.
In June 2013, the trial court held a bench trial at which it received evidence ore tenus. The issues tried were (1) whether the purported Mexican divorce was valid, (2) whether the wife was entitled to a share of the assets accumulated by the husband after July 29,1988, and (3) whether the wife was entitled to a share of the husband’s retirement account.
After the trial, the parties submitted posttrial briefs. In her posttrial brief, the wife asserted that the purported Mexican divorce was void because, she said, the husband had procured it through fraud by misrepresenting to the Mexican court that he and the wife had resided in Mexico and because, she said, the husband had neither notified her that he was seeking that divorce nor served her with process. She also asserted that she was entitled to a share of the assets the husband had accumulated after July 29, 1988, and that she was entitled to a share of his retirement account. In his posttrial brief, the husband conceded that the purported Mexican divorce judgment was invalid, that the parties were still married, and that the trial court had jurisdiction over the wife’s action. However, he asserted that the wife was estopped from claiming any portion of the assets he had accumulated after July 29, 1988, and any portion of his retirement account because, he said, both parties had led separate lives since July 29, 1988, and the wife had indicated on her income-tax returns and other documents filed since July 29,1988, that she was single.
In September 2013, the trial court entered a judgment that determined that the purported Mexican divorce was void; determined that the trial court had jurisdiction over the wife’s action; divorced the parties on the ground of incompatibility; found that the money the husband had won in the North Carolina Educational Lottery (“the lottery”) in 2011 constituted marital property; awarded the wife a property settlement in the amount of “$162,623.86, representing one-half of [the husband’s] after-tax lottery winnings”; and awarded the wife one-half of the value of the husband’s retirement account. The husband timely filed a postjudgment motion. Among other things, his post-judgment motion asserted that the trial court had erred in awarding the wife a property settlement because, he said, the amount awarded the wife as a property settlement exceeded the value of his estate and because, he said, the property settlement awarded the wife was not equitable. His postjudgment motion also stated:
“13. [The husband] requests that the Court vacate the Order that the ‘[wife] is awarded one-half the value of [the husband’s] U.S. Airways Inc. Employee Savings Plan, as reflected on Plaintiffs *1147 Exhibit 6’ because [the wife] failed to provide evidence or any proof of the present value of the benefits. See Underwood v. Underwood, 100 So.3d 1115 (Ala.Civ.App.2012) (reversing trial court’s award of 50% of retirement account because [the trial court] lacked jurisdiction to make award where wife failed to present evidence of present value at time of filing). Section 30-2-51(b), Ala.Code 1975[,] provides in pertinent part that ... ‘[t]he judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed....’
“14. [The husband] requests that this Court vacate the Qualified Domestic Relations Order that it entered on October 3, 2013[,] based upon the same grounds as stated in Paragraph 13 of this motion where [the wife] failed to provide evidence or any proof of the present value of the benefits, thereby depriving this Court of jurisdiction to award the Wife his retirement benefits....”
(Emphasis altered.)
At the hearing regarding the husband’s postjudgment motion, the husband argued that the trial court had erred in awarding the wife one-half of the value of the husband’s retirement account because, he said, “[t]he value of the retirement account at the time of separation was never established. [2] And that’s a jurisdictional issue according to case law that was cited in the motion to alter, amend, or vacate.” (Emphasis added.)
The trial court did not rule on the husband’s postjudgment motion within 90 days after it was filed; consequently, that motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., in January 2014. The husband then timely appealed to this court.

Factual Background

Because the trial court’s judgment was based on evidence the trial court received ore tenus at a bench trial, we must view the evidence in the light most favorable to the prevailing party, i.e., the wife. See, e.g., Lindsey v. Aldridge, 104 So.3d 208, 215 (Ala.Civ.App.2012) (holding that, in reviewing a judgment based on evidence received ore tenus, an appellate court must view the evidence in the light most favorable to the prevailing party). Viewed in that manner, the evidence tended to prove the following pertinent facts.
In November 1984, when she was 17 years old, the wife gave birth to the parties’ oldest child. The parties married in January 1985, while the wife was still 17 and the husband was 20. The parties had a second child in January 1987 and a third one in January 1988. On the morning of July 29,1988, the husband left the parties’ apartment and never returned. Before leaving, the husband had never told the wife that he was contemplating leaving. After the husband left, the wife did not hear from him until he telephoned her several weeks later and informed her that he had gone to Ohio to find a better job. The husband took the parties’ only automobile when he left. By 1991, the husband had moved to North Carolina, where he was still living when this action was tried. Although the husband paid child support after the State of Alabama brought a child-support action against him on behalf of the wife in 1991, he never paid the wife any spousal support after July 29, 1988.
*1148 After the husband left on July 29, 1988, the parties had very little contact, and they never lived together again. The husband never discussed the subject of a divorce with the wife and never served her with process in a divorce action commenced by him.
In 1999, the husband met a woman named Erin Cullen and told her that he was not married. The husband and Cullen began living together shortly after they met. The husband and Cullen subsequently became engaged, and, approximately two weeks before their wedding in 2002, the husband informed Cullen that he could not find any record of his divorce from the wife. The husband and Cullen then found a site on the Internet indicating that a divorce could be obtained in three days from a Mexican court. Although neither the husband nor the wife had ever lived in Mexico, Cullen and the husband sat in front of their computer while Cullen typed information supplied by the husband on an Internet application for a Mexican judgment divorcing the husband and the wife. The husband submitted the application on the Internet without ever notifying the wife that he was seeking a divorce or serving her with process. The husband received the purported Mexican divorce judgment in the mail approximately three days after he had submitted his application on the Internet. The wife did not learn of the purported Mexican divorce judgment until she commenced the present divorce action. After the husband received the purported Mexican divorce judgment, the husband and Cullen had a wedding ceremony.
Sometime before February 15, 2011, the husband purchased a ticket to participate in the lottery, and, on February 15, 2011, he won $1,000,000 in the lottery. The husband split the $1,000,000 with Cullen, and they each received a check for one-half of the net proceeds after deduction of taxes. The check the husband received was in the amount of $325,247.73. He deposited that check into his checking account in August 2011. Subsequently, on October 1, 2011, he was served with process in the present action. When he was served with process, the trial court had already entered its standing pendente lite order requiring the parties to preserve their assets in the form they were in when that order was entered. Despite that provision of the standing pendente lite order, the husband, on November 28, 2011, purchased a house (“the house”) with a purchase price of $299,405 using the proceeds of the $325,247.73 check he had received from the lottery.
After leaving the wife and the children on July 29, 1988, the husband obtained employment with U.S. Airways, Inc., and was still employed by U.S. Airways when this action was tried. He has a retirement account with U.S. Airways, and his interest in that account is 100% vested. According to his retirement account’s quarterly statement for the first quarter of 2013 (“the 2013 quarterly statement”), the last quarterly statement available when this action was tried, the value of his retirement account at the end of that quarter was $30,357.51.

Standard of Review

Because the trial court received evidence ore tenus, our review is governed by the following principles:
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Phil *1149 pot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).

Analysis

In his principal appellate brief, the husband first argues:
“The trial court erred in awarding to the wife one-half of the value of the retirement savings account as reflected in Plaintiffs Exhibit 6, which is an account statement for the period of January 1, 2013 to March 31, 2013. This statement comes some eighteen (18) months after the divorce was filed. It necessarily shows accumulation and interest earned during the pendency of the divorce.
This provision of the divorce decree violates § 30 — 2—51 (b)[, Ala.Code 1975,] which states that the Court may award part of the vested balance of the party at the time of filing the divorce. See Clore v. Clore, 135 So.3d 264 (Ala.Civ.App.2013), citing Smith v. Smith, 964 So.2d 663, 669 (Ala.Civ.App.2005)[,] wherein this Court states that a trial court may not award any post-complaint additions to the account and the income and appreciation thereon. See also Underwood v. Underwood, 100 So.3d 1115 (Ala.Civ.App.2012) (reversing trial court’s award of 50% of retirement account because [the trial court] lacked jurisdiction to make award where wife failed to present evidence of present value at time of filing).”
Section 30-2-51(b), Ala.Code 1975, provides:
“The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
“(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
“(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
“(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.”
(Emphasis added.)
In Robicheaux v. Robicheaux, 731 So.2d 1222 (Ala.Civ.App.1998), Mr. Robicheaux appealed from a judgment divorcing him and Mrs. Robicheaux and argued that “the [Tuscaloosa Circuit Court had] erred in valuing his retirement benefits on the date of the divorce judgment instead of on the date of the filing of the complaint for divorce” for purposes of awarding Mrs. Robicheaux a share of those benefits because, he said, “the language of § 30-2-51(b) [indicated] that the retirement benefits [were] to be valued at the time of the filing of the complaint.” 731 So.2d at 1224. Rejecting that argument, we stated:
*1150 “[In response to Mr. Robicheaux’s argument, Mrs. Robicheaux] argues that the [prepositional phrase ‘on the date the action for divorce is filed’ in] subsection (b) does not modify ‘present value,’ but instead modifies the phrases ‘may have a vested interest in’ and ‘may be receiving.’ We agree. Subsection (b) requires that, for a trial judge to consider including retirement benefits in the estate of a spouse, the spouse must, at the time the divorce was filed, either have been receiving those benefits or have had a vested interest in them. The statute does not indicate when the 'present value of the retirement benefits is to be determined. Therefore, the trial court did not err by valuing the husband’s retirement benefits as of the date of the divorce.”
Id. (emphasis added).
In Smith v. Smith, 964 So.2d 663 (Ala.Civ.App.2005), the Houston Circuit Court awarded Mrs. Smith one-half of Mr. Smith’s Snecma 401(k) Savings Plan, one-half of his Snecma Retirement Account Plan, and one-half of his TRW retirement account in the judgment divorcing them. This court reversed the judgment insofar as it had awarded Mrs. Smith a share of those retirement accounts, stating:
“[T]he record reflects that [Mr. Smith]’s Snecma 401k Savings Plan, his Snecma Retirement Account Plan, and his TRW account all contained some retirement benefits acquired before the parties’ marriage. Except for the Snecma 401k Savings Plan, which had a value of approximately $8,000 when the parties married, [Mrs. Smith] presented no evidence of the value of the retirement benefits in [Mr. Smith]’s retirement accounts when the parties[ ] married, i.e., the value of the retirement benefits acquired before the marriage. See Ala. Code 1975, § 30-2-51(b)(2). Also, as to the Snecma 401k Savings Plan, the Snecma Retirement Account Plan, and the TRW account, [Mrs. Smith] presented no evidence of the interest or appreciation on the premarriage benefits that accrued after the date of the parties[’] marriage. See id. Furthermore, as to the Snecma 401k Savings Plan and the Snecma Retirement Account Plan, which [Mr. Smith] and his employer continued to contribute to after the complaint for divorce was filed, [Mrs. Smith] presented no evidence of the value of the retirement benefits in those accounts in which [Mr. Smith] had a vested interest ‘on the date the action for divorce [was] filed’; as to those accounts the only evidence of the value that [Mr. Smith] had a vested interest in was the value at the time of trial or a few months before trial. In other words, the [Houston] [C]ircuit [C]ourt’s retirement-benefits award contains premarriage retirement benefits, and income and appreciation thereon, and postcomplaint retirement benefits, and income and appreciation thereon, in violation of § 30-2-51(b). See Ala. Code 1975, § 30-2-51(b)(2) (regarding retirement benefits accruing before marriage, and interest and appreciation thereon); see also Killingsworth v. Killingsworth, 925 So.2d 977, 982 (Ala.Civ.App.2005) (Retirement benefits ‘earned after the filing of the divorce action ... do not constitute vested benefits subject to division under § 30-2-51.’); Wilkinson v. Wilkinson, 905 So.2d 1, 5 (Ala.Civ.App.2004) (Murdock, J., concurring specially) (‘If the judgment ... had simply awarded a percentage of whatever benefits were vested in the husband as of the date of the filing of the complaint for divorce (along with any subsequent interest on or appreciation in value of those vested benefits), the judgment would have been in compliance with the first sentence of § 30-2-51(b).’).”
*1151 964 So.2d at 669 (emphasis added; footnote omitted). Clore v. Clore, 135 So.3d 264, 270 (AIa.Civ.App.2013), merely followed the holding in Smith v. Smith that, “under Ala.Code 1975, § 30-2-51(b), a retirement-benefits award incident to a divorce may not include ‘postcomplaint retirement benefits! ] and income and appreciation thereon.’ ”
Thus, an award of retirement benefits pursuant to § 30-2-51(b) may not include retirement benefits that were earned before the marriage or any interest or appreciation thereon, may not include any retirement benefits earned after the divorce complaint was filed or any interest or appreciation thereon, and may not include any benefits that were not vested on the date the divorce complaint was filed or any interest and appreciation thereon; however, such an award may include retirement benefits that were vested on the date the divorce complaint was filed and any subsequent interest or appreciation thereon. See Smith v. Smith, supra. Consequently, Smith v. Smith does not stand for the proposition that a spouse must prove the present value of the other spouse’s vested retirement benefits on the date the divorce complaint is filed in order to be awarded a share of those benefits under § 30-2-51(b). As we held in Robicheaux v. Robicheaux, § 30-2-51(b) “does not indicate when the present value of the retirement benefits is to be determined.” 731 So.2d at 1224. If all the retirement benefits are earned on or after the date the parties married and on or before the date the divorce complaint is filed and all the retirement benefits are vested on the date the divorce complaint is filed, those vested benefits are subject to division under § 30-2-51(b) based on evidence indicating the present value of those vested benefits on any date on or after the filing of the divorce complaint and on or before the entry of the divorce judgment. See Smith v. Smith, 964 So.2d at 669 (“ ‘If the judgment ... had simply awarded a percentage of whatever benefits were vested in the husband as of the date of the filing of the complaint for divorce (along with any subsequent interest on or appreciation in value of those vested benefits), the judgment would have been in compliance with the first sentence of § 30-2-51(b).’ ” (quoting Wilkinson v. Wilkinson, 905 So.2d 1, 5 (Ala.Civ.App.2004) (Murdock, J., concurring specially))); and Robicheaux v. Robicheaux, 731 So.2d at 1224 (“[Section 30-2-51(b) ] does not indicate when the present value of the retirement benefits is to be determined. Therefore, the trial court did not err by valuing the husband’s retirement benefits as of the date of the divorce.”).
In the present case, all the husband’s retirement benefits were earned after the parties married, but the husband continued working and continued to earn retirement benefits after the divorce complaint was filed. Consequently, the trial court’s basing the award to the wife of one-half of the value of the husband’s retirement account on the 2013 quarterly statement was erroneous not because the quarterly statement did not reflect the present value of the husband’s vested benefits in that account on the date the divorce complaint was filed but because it included retirement benefits earned after the filing of the divorce complaint and interest on, or appreciation of, those benefits. See Smith v. Smith, supra; and Ro-bicheaux v. Robicheaux, supra. Consequently, the assertion in the husband’s postjudgment motion that the award to the wife of one-half of the value of the husband’s retirement account based on the quarterly statement was erroneous “because [the wife] failed to provide evidence or any proof of the present value of the benefits” (emphasis added) did not correct *1152 ly identify the inclusion of retirement benefits earned after the filing of the divorce complaint and interest on, or appreciation of, those benefits as the reason why the trial court had erred in relying on the quarterly statement as the basis for its retirement-benefits award. Likewise, the husband’s argument at the hearing on his postjudgment motion that “[t]he value of the retirement account at the time of separation was never established” (emphasis added) did not correctly identify the inclusion of retirement benefits earned after the filing of the divorce complaint and interest on, or appreciation of, those benefits as the reason why the trial court had erred in relying on the quarterly statement. Insofar as the husband’s principal appellate brief cites Smith v. Smith, supra, for the proposition “that a trial court may not award any post-complaint additions to the account and the income and appreciation thereon,” the husband correctly identifies the reason why the trial court’s reliance on the quarterly statement was erroneous; however, we cannot reverse a trial court’s judgment based on an argument that was not presented to the trial court. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [an appellate court’s] review is restricted to the evidence and arguments considered by the trial court.”).
The husband next argues that the trial court erred in awarding the wife a property settlement in the amount of $162,623.86 because, he says, it was an award of alimony in gross that exceeded the value of his estate on the date it was awarded. The undisputed evidence established that, after the husband had been served with process in the present action and after the entry of the trial court’s standing pendente lite order requiring the parties to maintain their assets in the form in which they existed on the date that order was entered, the husband used the proceeds of the check he had received from the lottery in the amount of $325,247.73 to purchase the house, which had a value of $299,405. Although both the husband’s name and Cullen’s name are listed on the settlement statement, prepared for the closing of the purchase of the house, which implies that Cullen is listed as a grantee on the deed to the house, the record does not contain any direct evidence establishing whether the house is titled solely in the name of the husband or jointly in the names of both the husband and Cullen. However, even if the house is titled jointly in the names of both the husband and Cullen, the trial court could properly have treated the entire value of the house as a marital asset in dividing the parties’ marital property because the undisputed evidence indicated that the husband had paid the entire purchase price of the house using the proceeds of his lottery check, that any inclusion of Cullen on the title to the house was unsupported by any consideration, and that the use of the proceeds of the husband’s lottery check to purchase the house violated the provision of the standing pendente lite order requiring the parties to preserve their assets in the form in which they existed on the date that order was entered. See Pattillo v. Pattillo, 414 So.2d 915, 916 (Ala.1982) (holding that a trial court had erred in failing to treat certain property as marital property when the evidence indicated that one spouse had transferred it to the parties’ children for no consideration in order to defeat the other spouse’s marital rights in it); and Baggett v. Baggett, 870 So.2d 735, 740 (Ala.Civ.App.2003) (“‘“In Alabama a transfer of ... property made to defeat a spouse’s marital right is voidable.” ’ ” (quoting earlier eases)). Thus, the trial court could properly have deemed the *1153 entire value of the house to be a part of the marital estate for purposes of awarding the wife a property settlement on the ground that any inclusion of Cullen’s name on the title to the house was done to defeat the wife’s marital interest in one-half of the value of the house. Id. Because the value of the house, i.e., $299,405, exceeds the value of the property settlement awarded the wife, i.e., $162,623.86, we reject the husband’s second argument.
Finally, the husband argues that the division of the parties’ property was not equitable.
“ ‘A division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. When dividing marital property, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage.’ ”
Yohey v. Yohey, 890 So.2d 160, 164-65 (Ala.Civ.App.2004) (quoting Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996)).
In the present case, although the parties lived together for less than 4 years, they were legally married for over 25 years. When the action was tried, both parties were in their 40s and were in good health. The husband had worked for U.S. Airlines for over 20 years, while the wife had worked for the National Aeronautics and Space Administration for 9 years. The parties’ only significant assets were the house, which the husband had purchased with his lottery winnings, and the husband’s retirement account. The trial court reasonably could have found that the husband’s leaving the wife and children without prior notice and his failure to return for over 20 years was the sole cause of the breakdown of the marriage.
As explained above, the trial court could properly have treated the entire $299,405 value of the house as marital property on the ground that any inclusion of Cullen’s name on the title to the house was intended to defeat the wife’s marital interest in one-half of the value of the house. With the value of the house treated in that manner, the trial court awarded the wife $162,623.86 of that value and awarded the husband $136,781.14 of it. The trial court awarded the wife one-half of the value of the husband’s retirement account. Taking into account the value of the marital property awarded each party and the other pertinent factors, we cannot hold that the trial court’s division of the marital property is inequitable. Therefore, we reject the husband’s third and final argument. Accordingly, the trial court’s judgment is due to be affirmed.
APPLICATION GRANTED; OPINION OF APRIL 3, 2015, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. Although the parties had three children, they were all over the age of 19 when the wife filed her divorce complaint, and, therefore, she made no claim for custody or child support.

2. The parties "separated” on July 29, 1988, before the husband obtained employment with U.S. Airways, Inc., which is the employer affiliated with his retirement account.