Warren M. Dunn ("the husband") and Suzette T. Dunn ("the wife") were married in December 1978 and separated in April 2001. Their marriage produced three children; only one child was a minor at the time the parties' divorce was tried. After a failed mediation attempt and a trial, the trial court divorced the parties; awarded them joint legal custody of their minor child; awarded the husband sole physical custody of the minor child; deviated from the child-support guidelines by not requiring the wife to pay child support; awarded the wife one-half of the husband's retirement benefits; and divided the parties' real and personal property and debts. The husband appeals, arguing that the trial court erred by failing to order the wife to pay child support, in dividing the parties' property inequitably, and in awarding the wife one-half of his retirement benefits.
The testimony established that the wife, who was a teacher at the time the parties were married, had primarily stayed at home to rear the children, at her husband's request. She had a few part-time jobs after the children were born, but none of those jobs lasted longer than one year. The wife has not accrued any retirement benefits. She was 47 years old at the time of trial and was employed by Toxey Outdoors and Supply ("Toxey"), earning a monthly gross income of $866.66. She performs bookkeeping, management, and cashiering services for the retail store. Before working at Toxey, she had been employed at G.O.C., Ltd., where she earned approximately $300 per week performing bookkeeping and accounting services for a number of retail stores. She said she left that job because she was under a lot of pressure and it "got too much for her." At the time of trial, the wife had been recertified as a teacher, but she had not yet secured a teaching position despite applying for positions with public and private schools in the area. She testified that she had a few credit cards in her own name, which had credit balances totaling "a couple of thousand dollars." She admitted that she was currently in a romantic relationship with the owner of Toxey, but she denied that the relationship with him had started before the parties' separation.
The wife stated that she thought that the marital residence was worth approximately $110,000. She testified that she presently lived in a mobile home that had formerly been the marital residence, which is located on property that the parties had purchased from the wife's grandmother ("the grandmother's property"). The *Page 893 
grandmother's property, consisting of approximately an acre, also contains a house, which the wife testified was in an unliveable condition. She testified that the grandmother's property, including the house and mobile home, was worth approximately $30,000. The remaining balance on the mortgage on that property was $23,065.63. The husband concurred with the $30,000 valuation, which was further supported by an appraisal that assigned the property and dwellings a value of $32,000.
The husband, who was 58 years old at the time of trial, is employed by Georgia Pacific Company and had been employed by that company or its predecessors for 31 years. The husband is a shift supervisor and earns an annual salary of $66,600. He testified that the marital residence was worth approximately $80,000, but he accepted as fair an appraisal value of $85,000. The marital residence is subject to two mortgages; the first mortgage has a balance of $26,685, and the second mortgage has a balance of $19,104. The husband also testified that the marital residence required some repairs, including repairs to the plumbing and the swimming-pool liner. Other than the mortgage debt, the husband testified that he and the wife had one joint credit card with an unspecified balance that required monthly payments in the amount of $247, that he had personal credit cards with unspecified balances that required monthly payments in the amounts of $184 and $78, and that he had a monthly truck payment in the amount of $402.61.
The husband testified that his company provides its employees with a pension plan, which the husband testified was worth approximately $60,000. However, a letter from Sharon K. Philpott, a senior paralegal in Georgia Pacific's law department, stated that the husband's balance under the corporation's pension plan, after its conversion from the Fort James pension plan (the pension plan offered by Georgia Pacific's predecessor), would be $42,080.79 as of October 1, 2001. The letter also stated that the amount could be paid out in a lump sum. However, the husband's "Fort James Frozen Benefit Statement as of September 30, 2001," indicated that the husband's "Final Average Compensation" amount under than plan was $60,815.86 and that he would be entitled to a monthly benefit, if he retired at age 65 or later, of $533.13. The husband also has a 401(k) account, the balance of which, according to the husband's testimony at trial, was approximately $38,000. In addition, the husband has an outstanding loan against the 401(k) account with a remaining balance of $19,000.
The parties both testified that their minor child, who was 16 years old at the time of trial, should live with the husband, as the child wished. In addition, the husband testified that he was not asking the wife to help him support the child, and he testified, without objection, that he had offered during settlement or mediation negotiations to waive child support from the wife. However, he also stated that he would be willing to assume all the costs of rearing the child only "if all things [were] equal. . . . If not, I [would] require child support." The trial court's judgment does not require the wife to pay child support; the trial court explained the deviation from the child-support guidelines by stating that the deviation is justified by the relative incomes of the parties and the debt assigned to the wife under the divorce judgment.
The husband first argues that the trial court's division of property is inequitable. He complains that the award of the grandmother's property and one-half of his retirement benefits to the wife, coupled with *Page 894 
the wife's not being ordered to pay child support, her being awarded one-third of the equity in the marital residence, and his being ordered to assume all of the remaining marital debt, amounts to an inequitable division of the marital assets. His major contention is that the wife was not entitled to an award of one-half of his retirement benefits because the evidence failed to establish the amount of retirement benefits subject to division under Ala. Code 1975, § 30-2-51(b), and the cases construing that statute. See Applegate v. Applegate,863 So.2d 1123 (Ala.Civ.App. 2003), and McAlpine v. McAlpine,865 So.2d 438 (Ala.Civ.App. 2002).
Generally, a trial court is afforded a wide degree of discretion in dividing the marital assets of the parties upon divorce. Moody v. Moody, 641 So.2d 818 (Ala.Civ.App. 1994). The only limitation on that discretion is that the division of property be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court. Ross v. Ross, 447 So.2d 812 (Ala.Civ.App. 1984). In making the division, the trial court may consider several factors, including the parties' respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App. 1986). The property division made by the trial court will not be set aside on appeal absent a palpable abuse of the trial court's discretion. Id.
Section 30-2-51(b) states:
 "(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
 "(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
 "(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
 "(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
(Emphasis added.)
This court recently discussed the requirements of that statute.See Smith v. Smith, 836 So.2d 893 (Ala.Civ.App. 2002).
 "A reading of § 30-2-51(b) indicates that a trial judge has the discretion to divide a spouse's retirement benefits if either of two conditions exists at the time the complaint for divorce is filed: a spouse must have a vested interest in or be receiving retirement benefits. Section 30-2-51(b) then states that the trial judge's discretion to divide retirement benefits is further limited by three additional conditions: the 10-year marriage rule of subsection (1); the post-nuptial acquisition-of-benefits rule of subsection (2); and the 50 percent division rule of subsection (3). The apparent meaning of these provisions, when read as a whole, is that the trial judge may divide the value of any retirement benefits in which one spouse has a vested interest or is receiving on the date the action for divorce is filed, provided that the parties have been married for 10 years as of that date, that the judge divides only those retirement benefits acquired during the marriage, and that the judge awards the noncovered spouse no more *Page 895 
than 50 percent of the benefits that may be considered by the court."
Smith, 836 So.2d at 899-900 (second emphasis added).
The husband and the wife had been married 22 years and 8 months when the wife filed for a divorce in August 2001. The husband had, according to his testimony, worked for Georgia Pacific or its predecessors in the same location for 31 years. The record does not clearly indicate the specific date that the husband began accruing his retirement benefits; however, his pension-plan statement indicates that his "vesting service credit" was 29.750 years as of September 30, 2001. The wife presented evidence concerning the amount of money accumulated in the husband's retirement accounts. She presented no evidence concerning the amount of benefits that accrued during the parties' marriage. Thus, the husband argues that the wife's failure of proof precludes an award of his retirement benefits to her.
At least two cases have clearly addressed the issue presented by the husband. See Piatt v. Piatt, 736 So.2d 632, 632-33
(Ala.Civ.App. 1999), and DuBois v. DuBois, 714 So.2d 308, 310
(Ala.Civ.App. 1998). In both Piatt and DuBois, this court reversed a trial court's judgment awarding to one spouse a portion of the other spouse's retirement benefits because the trial court had failed to "deduct `benefits acquired prior to the marriage'" DuBois, 714 So.2d at 310; see also Piatt,736 So.2d at 633. In both Piatt and DuBois, this court remanded the case for the trial court to determine the amount of retirement benefits subject to division. Piatt,736 So.2d at 633; DuBois, 714 So.2d at 311. Since the decisions in Piatt
and DuBois, this court, in cases like McAlpine andApplegate have reversed awards of retirement benefits on the basis of a lack of evidence of the present value of the retirement benefits, with the express instruction that the trial court not award any of those benefits on remand because of the lack of requisite proof. Applegate, 863 So.2d at 1124-25;McAlpine, 865 So.2d at 440-41. In those cases involving an appeal of the entire property division or alimony award, however, the trial court was instructed to reconsider the property division and/or alimony awards in light of the impact of the change in the amount of the award of retirement benefits.Applegate, 863 So.2d at 1125; McAlpine, 865 So.2d at 442;DuBois, 714 So.2d at 311. Accordingly, we reverse the trial court's award of retirement benefits to the wife and remand the cause with instructions that the trial court not award the wife any portion of the husband's retirement benefits and that it reconsider the division of the parties' marital assets in light of the removal of the husband's retirement benefits from consideration.
The husband also argues that the trial court's judgment on the child-support issue should be reversed because the record does not contain a CS-42 "Child Support Guidelines" form as required by Rule 32(E), Ala. R. Jud. Admin.; because the trial court erred by failing to impute income to the wife; and because the trial court's deviation from the child-support guidelines is not supported by the evidence. The testimony concerning the wife's income revealed that her monthly net income is only $752.72. She testified that she had been paying the child's orthodontist $90 per month, that she was paying her middle child's truck payment in the amount of $242.66 per month, and that she was also paying on her own personal credit-card debt, although the amount of those payments were not specified. The judgment required her to pay the mortgage on the grandmother's property and awarded her no alimony with which to offset that *Page 896 
payment. She was, however, awarded a lump sum of $16,239.63, which she planned to use to help her pay that outstanding mortgage.
The husband's argument that the lack of a completed CS-42 form is reversible error is based in large part on this court's insistence that parties and trial courts comply with Rule 32(E).See Martin v. Martin, 637 So.2d 901, 902 (Ala.Civ.App. 1994). However, we have not, in every instance, reversed a trial court's child-support judgment simply because the requisite forms were not contained in the record. See Rimpf v. Campbell,853 So.2d 957, 959 (Ala.Civ.App. 2002); Mosley v. Mosley, 747 So.2d 894,898 (Ala.Civ.App. 1999); and Dismukes v. Dorsey, 686 So.2d 298,301 (Ala.Civ.App. 1996) (stating that this court need not reverse a child-support award even though the required forms are not in the record where the record "clearly indicat[es] that the award comports with the evidence regarding the parties' incomes"); seealso Devine v. Devine, 812 So.2d 1278, 1282 (Ala.Civ.App. 2001). If this court has been able to determine how a trial court computed the child-support obligation based on testimony or other evidence, we have affirmed. In the present case, the trial court did not award any child support. The failure of the trial court to complete a CS-42 form, which is the form upon which child support is calculated, is certainly understandable; the trial court made no computations. In addition, the parties' respective incomes are clearly established in the record, so the lack of a CS-42 form will not impact future attempts at modification. Therefore, we will not reverse the trial court's judgment on the basis of the absence of a CS-42 form.
The husband further argues that the trial court erred in failing to impute additional income to the wife based on the testimony at trial establishing that the wife had the ability to earn more income than she was earning at the time of trial. Rule 32(B)(5), Ala. R. Jud. Admin., does require a trial court to impute income to a parent it finds to be voluntarily underemployed or unemployed. Whether to find a parent voluntarily underemployed or unemployed, however, is within the trial court's discretion. Griggs v. Griggs, 638 So.2d 916, 918 (Ala.Civ.App. 1994). Although the testimony established that the wife had quit a job in which she was earning approximately $1,300 per month before the divorce trial, the trial court was still not required to find that the wife was voluntarily underemployed. The wife is a teacher, and the part-time positions in which she had worked in the past have been largely clerical. The job she had at the time of trial with Toxey included bookkeeping work and some cashiering at the store. Her most recent employment before the work at Toxey was with G.O.C., Ltd., where she was responsible for accounting and bookkeeping work for several stores; she testified that that job became too much for her to handle. Because the wife is not an accountant or bookkeeper by trade, the trial court was free to consider whether the wife's choice to forgo a larger paycheck was motivated by being overwhelmed by work that she was not trained for. The trial court's failure to find that the wife was voluntarily underemployed, then, is not an abuse of its discretion.
Finally, the husband argues that the record does not support a deviation from the child-support guidelines in the present case. As noted above, the wife makes a meager salary. Although we are not sure of her monthly expenses, we know that the truck payment, the orthodontic bill, and the remaining payments on the property she was awarded will expend a large amount of that meager salary. In addition, the husband testified at trial that *Page 897 
he did not want the wife's financial assistance. He said that he had always been willing to waive child support. See Ex parteTabor, 840 So.2d 115, 122 (Ala. 2002) (holding that a trial court may approve an agreement "waiving" child support, but that such an agreement may not permanently waive a parent's obligation to provide support for his or her child and is subject to modification upon changed circumstances). If the wife secures a teaching position and increases her income in the future, the husband can then seek a modification of the judgment and request child support. See Tucker v. Tucker, 681 So.2d 592
(Ala.Civ.App. 1996). In light of the respective incomes of the parties and the husband's offer to waive child support at trial, we will not reverse the trial court's judgment insofar as it deviates from the child-support guidelines by not requiring the wife to pay child support.
In conclusion, the trial court's judgment is reversed insofar as it awards the wife one-half of the husband's retirement accounts. The cause is remanded to the trial court with instructions that it not award the wife any portion of the husband's retirement accounts because the evidence does not demonstrate what portion of those benefits were accrued during the marriage so as to be divisible pursuant to § 30-3-51(b); on remand, the trial court should reconsider the division of the parties' marital assets. The trial court's judgment is affirmed insofar as it deviates from the child-support guidelines and does not require the wife to pay child support.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, with writing.
YATES, P.J., concurs in part and dissents in part, with writing.