John S. Capone, Jr. ("the husband"), and Beverly A. Capone ("the wife") were married in April 1984. In late December 2004, the parties separated and the husband sued the wife for a divorce; the wife counterclaimed for a divorce, alleging that the husband had committed adultery. After a trial, the trial court entered a judgment divorcing the parties on the grounds of adultery, incompatibility of temperament, and irretrievable breakdown of the marriage.
The divorce judgment awarded the husband his 2004 Ford F150 pickup truck, his 1969 Chevrolet Chevelle automobile, and a 2004 Harley Heritage motorcycle; the husband was also required to be responsible for any debt associated with the vehicles. The wife was awarded her 2004 Buick Ranier sport-utility vehicle; she, too, was required to be responsible for any debt associated with that vehicle. The trial court also awarded each party one-half of the certificates of deposit ("CDs"), savings accounts, or other accounts acquired during the marriage; one-half, or, specifically, 5.5 million, of the 11 million Iraqi dinars acquired by the husband during a military assignment in Iraq; and one-half, or, specifically, $8,500, of a $17,000 cashier's check in the husband's possession at the time of trial. The judgment further awarded the wife an approximately five-acre parcel of real property acquired by the parties during the marriage, subject to the indebtedness thereon. Each party was awarded one of the two burial plots purchased by the parties during the marriage.
The judgment also required the husband to pay the wife alimony in the amount of $2,500 per month and awarded the wife 25% of the husband's military-retirement benefits upon his receipt of those benefits. The judgment states that the $2,500-per-month alimony payment will be reduced by the monthly retirement-benefit payment, once the wife begins receiving that payment. The judgment further required the husband to name the wife as the beneficiary of his retirement survivor benefit plan. *Page 837 
Finally, the trial court required the husband to name the wife as the irrevocable beneficiary of his existing servicemember's life-insurance policy until such time as she dies, remarries, or cohabits with another person; the judgment also prohibited the husband from borrowing against, pledging, or otherwise encumbering the value of that life-insurance policy.
The husband, who was 49 years old at the time of trial, is employed by the United States Army; his rank is sergeant major. His monthly income at the time of trial was $6,755. At the time of trial, the husband had 24 years of active service and 6 years of reserve service in the Army. He testified that he had no vested retirement benefits and that, if he died the following day, he would have no retirement survivor benefits. When cross-examined by the wife's counsel, the husband testified that he was eligible to retire because of his length of service and that, if he were to retire at the time of trial, he would receive $3,924 per month in retirement benefits. In addition, the husband agreed that the table that the wife's counsel showed him indicated that, if he were to retire in 20 years, he would receive $7,543 per month in retirement benefits. The husband, noted, however, that the Army was not likely to allow him to retire in the near future in light of the need for service members to serve in Iraq.
The husband testified that he was given the 11 million Iraqi dinars as a gift from a Kuwaiti gentleman with whom he had worked while stationed in Iraq. He said that he was also given a Rolex brand watch as a gift from the company for which this Kuwaiti gentleman worked. The wife, however, testified that the husband had asked her if he could buy the dinars as an investment.
The wife, who was 48 years old at the time of trial, was unemployed. According to the husband, she had worked, at times during the marriage, as a bank teller and as a realtor. She suffers from chronic headaches, fatigue, and fibromyalgia. Although she applied for disability benefits in 1996, she was determined not to be disabled.
The wife testified that the husband had had an affair with J.T., a mutual friend of the couple's and a coworker of the husband. According to the wife, J.T. and the husband would speak to each other regularly on the telephone and J.T. and the husband both lied to her about going on a temporary-duty assignment ("TDY") to Texas in November 2004. The wife said that she drove the husband to the Atlanta airport on November 13, 2004, and that he told her that he would be going to a TDY in Texas for a week. She also said that he told her that J.T. would also be on a TDY in Texas that week, but that she was taking a different flight. The wife further reported that the husband called her when his flight arrived and each day that week, reporting how hot it was and what activities he was engaging in. In addition, the wife stated that J.T. also called her during that week, likewise describing the TDY activities and how hot it was. She said that she believed that the husband and J.T. concocted the Texas TDY story as an elaborate scheme to cover up the husband's affair with J.T.
The wife also photographed the husband and his father's truck, which the husband was using, outside J.T.'s apartment on January 1, 2005. According to the wife, she arrived around 8:00 in the morning, central time, and that she watched J.T.'s apartment for approximately five hours. She said that she saw the husband go in and out of the apartment and load and unload boxes from J.T.'s vehicle; she also said that the husband left once and returned approximately 15 minutes later. *Page 838 
The wife said that she later telephoned the husband on his cellular telephone and asked him what he was doing that day; according to the wife, the husband lied to her and told her he was with his father looking at old cars.
The husband denied having an affair with J.T., stating that they were friends. He said that he and J.T. had both attended a TDY in Texas in August, not November. He denied telling the wife that he was going to Texas in November because, he said, he attended a school in Stockbridge, Georgia, that week in November and, he testified, he had told his wife this. He also admitted staying at J.T.'s apartment on certain nights after the parties' separation; however, he stated that he had always stayed in J.T.'s guest room.
The husband appeals the trial court's judgment, seeking reversal on several grounds. He first argues that the trial court's finding that he committed adultery is not supported by the evidence. He further argues that the trial court's award of alimony to the wife and the division of property were inequitable. Further, he complains that the trial court's award to the wife of 25% of his military-retirement benefits and the requirement that he make the wife the beneficiary of his military survivor benefit plan violate Ala. Code 1975, §30-2-51(b). Finally, he complains that the trial court improperly ordered that he make the wife the irrevocable beneficiary of his servicemember's life-insurance policy.
The husband first argues that the wife failed to present sufficient evidence from which the trial court could have found that he had committed adultery with J.T.
 "`While it is difficult and somewhat rare to prove adultery by direct means, the charge of adultery in a divorce case may be proven by circumstantial evidence which creates more than a mere suspicion.' Billington v. Billington, 531 So.2d 924, 924
(Ala.Civ.App. 1988). Proof to support the charge of adultery `must be sufficiently strong to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference.' Boldon v. Boldon, 354 So.2d 275, 276
(Ala.Civ.App. 1978)."
Fowler v. Fowler, 636 So.2d 433, 435
(Ala.Civ.App. 1994); see also Langley v. Langley,617 So.2d 678, 679 (Ala.Civ.App. 1992); and Hooker v.Hooker, 593 So.2d 1023, 1025 (Ala.Civ.App. 1991). The husband complains that the only evidence of adultery that the wife presented was her suspicion of an affair and the fact that the husband had visited and stayed at J.T.'s apartment at times after the parties' separation.
The evidence of adultery adduced in Fowler consisted of the fact of the numerous telephone calls between the husband and a female coworker, some at very late hours and from public telephones, the fact that the husband and the coworker associated outside the office, the fact that the parties' marriage counselor considered the relationship between the husband and the coworker inappropriate, and the fact that the husband had rejected the wife during the period in which the telephone calls between the husband and the coworker had occurred. Fowler, 636 So.2d at 435. Those facts, while sufficient to create a suspicion of adultery, were not sufficient to "`lead . . . to the conclusion of adultery as a necessary inference.'" Id. at 436 (quotingBoldon, 354 So.2d at 276). Likewise, the evidence inHooker, which consisted of late-night telephone calls and the alleged paramour's taking a job in the area and renting a room in the same building as the husband, was insufficient to create more *Page 839 
than a suspicion of adultery. Hooker,593 So.2d at 1025-26.
Our supreme court has also had occasion to consider what degree of circumstantial evidence would "lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference." Maddox v. Maddox, 281 Ala. 209,212, 201 So.2d 47, 49 (1967). In Maddox, the husband presented the testimony of Jack Barbee, a friend of the husband's, who claimed to have seen the wife in a compromising situation. Maddox, 281 Ala. at 212, 201 So.2d at 49. According to Barbee, while he was driving one day, he saw the wife stop her automobile near another automobile that an unidentified man was driving. Id. Barbee said that the two automobiles then proceeded to drive to another location, at which time the wife and the man got into the same automobile.Id. Once they were in the same automobile, said Barbee, the wife and the man drove to a motel. Id. Barbee then explained that the wife and the man remained at the motel for at least an hour, based on the fact that Barbee, after concluding the business he had nearby in approximately one hour, drove through the motel parking lot and discovered the automobile still parked there. Id.
In reversing the trial court's judgment insofar as it found that the wife had committed adultery, the court in Maddox
stated:
 "We are of the opinion that Barbee's testimony is wholly insufficient under our authorities to prove adultery. . . .
 "We recognize the long-standing rule of presumption in favor of the correctness of the trial court's findings in a case where the evidence is taken in the presence of the court. But in this case we are clear to the conclusion that the trial court's finding that the evidence showed that [the wife] was guilty of the charge of adultery is plainly and palpably wrong."
Id., 281 Ala. at 213, 201 So.2d at 50.
The evidence at trial in this case indicated that both the wife and the husband had been friends with J.T. for a significant period of time. The wife had herself spent time with J.T., and the couple had often eaten dinner with J.T. when the husband and J.T. were required to travel on TDYs. The wife testified that she had been uncomfortable about the frequency of telephone calls between the husband and J.T.; she also said that she told her husband that his and J.T.'s frequent calls to each other might look inappropriate. The husband admitted that he and J.T. were friends and that he had stayed at J.T.'s apartment after the parties' separation; however, he denied having a romantic or sexual relationship with J.T.
The evidence concerning the husband's telephone contact with J.T. and his decision to stay overnight at her apartment on occasion after the parties' separation might lead one to suspect adultery. However, we agree with the husband that the evidence at trial was not "`sufficiently strong to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference.'" Fowler,636 So.2d at 435 (quoting Boldon, 354 So.2d at 276). Thus, we must reverse the trial court's judgment insofar as it is based on a finding of adultery, and we instruct the court on remand to remove adultery as a ground for the divorce.
We next turn to the husband's interrelated arguments concerning the trial court's award of the husband's military-retirement benefits and military-survivor benefits to the wife. The husband contends that the wife failed to establish the amount of retirement benefits subject to division under Ala. Code 1975, § 30-2-51(b). *Page 840 
He also points out that the award of survivor benefits to the wife potentially runs afoul of the 50% rule of § 30-2-51(b)(3). We agree.
Section 30-2-51 (b) states:
 "(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
 "(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
 "(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
 "(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
This court has explained the requirements of § 30-2-51(b).See Smith v. Smith, 836 So.2d 893 (Ala.Civ.App. 2002).
 "A reading of § 30-2-51 (b) indicates that a trial judge has the discretion to divide a spouse's retirement benefits if either of two conditions exists at the time the complaint for divorce is filed: a spouse must have a vested interest in or be receiving retirement benefits. Section 30-2-51 (b) then states that the trial judge's discretion to divide retirement benefits is further limited by three additional conditions: the 10-year marriage rule of subsection (1); the post-nuptial acquisition-of-benefits rule of subsection (2); and the 50 percent division rule of subsection (3). The apparent meaning of these provisions, when read as a whole, is that the trial judge may divide the value of any retirement benefits in which one spouse has a vested interest or is receiving on the date the action for divorce is filed, provided that the parties have been married for 10 years as of that date, that the judge divides only those retirement benefits acquired during the marriage, and that the judge awards the noncovered spouse no more than 50 percent of the benefits that may be considered by the court."
Smith, 836 So.2d at 899-900.
The testimony at trial clearly established that the husband had been employed by the Army for 10 years before his marriage to the wife. Although the wife attempted to establish the amount of benefits the husband would receive if he retired at the time of trial, she did not present evidence of what portion of the husband's retirement benefits were accumulated during the parties' marriage. Her failure to do so requires us to reverse the portion of the judgment awarding retirement benefits to the wife, because the failure to present the necessary evidence concerning the portion of benefits acquired during the marriage prevents a trial court from exercising its discretion to award one spouse any portion of the retirement benefits of the other spouse. Dunn v. Dunn, 891 So.2d 891, 895
(Ala.Civ.App. 2004) (reversing a judgment awarding retirement benefits because there was no evidence of the amount of benefits accumulated during the parties' marriage); see alsoApplegate v. Applegate, 863 So.2d 1123, 1124
(Ala.Civ.App. 2003) (stating that a trial court has no discretion to award retirement benefits if there is no evidence of the present value of those benefits); and McAlpine v.McAlpine, 865 So.2d 438, 441 (Ala.Civ.App. 2002) (same). *Page 841 
In addition, we have held that the award of survivor benefits potentially violates § 30-2-51 (b), partly because such an award could potentially award one spouse an amount in excess of 50% of the other spouse's retirement benefits. Wheeler v.Wheeler, 831 So.2d 629, 635 (Ala.Civ.App. 2002). Thus, we agree with the husband, and we reverse the judgment insofar as it requires the husband to name the wife as a beneficiary of his military survivor benefit plan.
Because we have reversed the trial court's judgment insofar as it awards retirement benefits to the wife, we need not consider the husband's arguments that the remainder of the property division, including the alimony award, is inequitable. This court must consider the issues of property division and alimony together when reviewing the decision of the trial court.Albertson v. Albertson, 678 So.2d 118, 120
(Ala.Civ.App. 1995). As we held in Dunn, when we reverse a judgment awarding retirement benefits, the trial court on remand may reconsider the entire property division in light of the removal of the retirement benefits from consideration.Dunn, 891 So.2d at 895.
The husband's final argument is that the trial court erred by requiring him to name the wife as a beneficiary of his service-member's life-insurance policy. Because the trial court is free to reconsider its judgment insofar as it requires the husband to name the wife as a beneficiary of this policy in light of our instructions to the court to reconsider the alimony and property-division aspects of the judgment, we need not address the husband's argument concerning this issue at this time.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MURDOCK, J., concurs in the result, with writing.
BRYAN, J., concurs in the result, without writing.
PITTMAN, J., concurs in part and dissents in part, with writing, which THOMPSON, J., joins.