41 So.3d 775 (2009)
Randy CAMPBELL
v.
Sherri Lynn CAMPBELL.
2070724.
Court of Civil Appeals of Alabama.
April 24, 2009.
*777 Roianne Houlton Conner, Montgomery, for appellant.
Michael A. Mosley, Dadville, for appellee.
PITTMAN, Judge.
Randy Campbell ("the husband") appeals from a divorce judgment that, among other things, ordered him to pay alimony to Sherri Lynn Campbell ("the wife"), awarded the wife a portion of his military-retirement benefits, and ordered him to pay a portion of the wife's attorney fees.
The parties were married on May 24, 1985, and were granted a legal separation on August 26, 2005, in Montgomery County. On September 14, 2007, the husband filed a complaint seeking, among other things, a divorce from the wife and a division of the parties' marital property and debts. The following month, the wife filed an answer and a counterclaim seeking a divorce from the husband. The trial court conducted an ore tenus proceeding on January *778 31, 2008, at which time the parties; Robert Campbell, the parties' adult child; and Kenneth Peoples, a private investigator hired by the husband,[1] testified.
The husband testified that he had served 21.5 years in the United States Air Force and that he had retired in 2003 as a master sergeant. He acknowledged that the wife had traveled with him throughout his military career and had reared their son, but he added that she occasionally had held various short-term low-wage jobs during the marriage. The husband stated that he had begun receiving $1,269.68 in monthly military-retirement benefits after retiring. The husband testified that he had been hired by CSC Applied Technology in 2003 to work as a support technician helping to operate the Maxwell Air Force Base computer network; he offered a statement indicating that his biweekly income from that employment was $1,722.18. The husband also testified that he had an employer-funded 401(k) retirement account through his present employer; he stated that, although he did not begin making monthly contributions to that account until October 2006, by the time of trial the total amount in the account was $12,400. The wife stated that she had no professional employment experience and that she was only working part-time because of multiple health problems. She stated that her hourly wage was $6.75. Although the wife admitted that she could not afford the marital residence, she requested alimony and a portion of the husband's retirement accounts as her share of the marital estate.
The wife accused the husband of being verbally and physically abusive throughout the marriage; the husband admitted that he and the wife had had a volatile relationship throughout the marriage. He refused to characterize either party as abusive, but he admitted that screaming, pushing, shoving, and threats were regularly part of the marital arguments. Although he was willing to give certain personal property to the wife, the husband stated his opinion that the wife was not entitled to alimony or to any share of his two retirement accounts.
The trial court entered a judgment on March 31, 2008, in which it awarded the marital residence to the husband together with the sole responsibility for retiring the debt secured by that property. Each party was awarded a motor vehicle and certain items of personal property. The husband was ordered to pay alimony in the amount of $500 per month for 3 years; he was also ordered to pay the wife 42% of his monthly military-retirement benefits. The husband was instructed to maintain health-insurance coverage on the wife and to reimburse her for dental expenses that she had incurred during the pendency of the divorce action. In addition, the wife was awarded one-half of the husband's 401(k) retirement savings account; the husband was also instructed to pay one-half of the wife's attorney fees.
The husband contends that the trial court erred in awarding the wife alimony, a portion of his military-retirement benefits, a portion of his 401(k) account, and attorney fees. The law is "well settled that trial judges enjoy broad discretion in fashioning divorce judgments." Ex parte Bland, 796 So.2d 340, 343 (Ala.2000). "`In reviewing the trial court's judgment in a divorce case presented ore tenus, we will presume the judgment to be correct until it is shown to be plainly and palpably wrong or unjust.'" Id. (quoting Ex parte *779 Jackson, 567 So.2d 867, 868 (Ala.1990)). Matters of alimony and property division are interrelated, and a reviewing court must consider the entire judgment in determining whether the trial court abused its discretion on either issue. See McClelland v. McClelland, 841 So.2d 1264, 1271 (Ala.Civ.App.2002) (citing Willing v. Willing, 655 So.2d 1064, 1066-67 (Ala.Civ.App. 1995)).
In addition, the law is well settled that "`"[p]roperty divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court."'" Ex parte Drummond, 785 So.2d 358, 361 (Ala.2000) (quoting Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ. App.1996), quoting in turn Duckett v. Duckett, 669 So.2d 195, 197 (Ala.Civ.App. 1995)); see also Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996).
"`Each case is decided on its own peculiar facts and circumstances. Criteria which should be considered by the trial court when awarding alimony and dividing property include the length of the parties' marriage, their ages, health, station in life, and future prospects; the source, value, and type of property owned; the standard of living to which the parties have become accustomed during the marriage and the potential for maintaining that standard; and, in appropriate situations, the conduct of the parties with reference to the cause of divorce.'"
McClelland, 841 So.2d at 1271 (quoting Currie v. Currie, 550 So.2d 423, 425 (Ala. Civ.App.1989)); see also Brasili v. Brasili, 827 So.2d 813 (Ala.Civ.App.2002).
The husband first contends that the trial court could not award the wife any alimony in light of the evidence indicating that the wife was cohabiting with another man. The husband correctly references Ala.Code 1975, § 30-2-55, providing for the termination of periodic alimony "upon ... proof that ... such spouse is living openly or cohabiting with a member of the opposite sex." However, our caselaw requires that the husband prove "some permanency of relationship, along with more than occasional sexual activity." Sanders v. Burgard, 715 So.2d 808, 811 (Ala.Civ.App.1998).
The husband's private investigator testified that he had determined that the wife was living at the residence of Michael Blankenship. In contrast, the wife testified that, after the husband had been awarded the marital residence as part of the parties' legal separation, she had been unable to afford independent housing. She stated that she had moved into Blankenship's home and had been renting a bedroom from him for $125 a month; the trial court admitted documentation offered by the wife indicating that she had continued to pay monthly rent to Blankenship throughout the parties' separation and until the time of trial. The wife admitted that, subsequent to her arrival as a tenant, she had begun dating Blankenship; she also admitted that Blankenship and she had indulged in occasional sexual relations. The wife, however, insisted that, as soon as possible, she intended to move into an apartment of her own and vehemently denied the husband's contentions that she was "cohabiting" with Blankenship in an ongoing or permanent manner.
To the extent that the trial court's judgment does not contain detailed findings of fact, this court must assume that "the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). The trial court's judgment made no express *780 finding regarding the wife's alleged cohabitation but, instead, awarded the wife periodic alimony in the amount of $500 per month for three years. That award is an implicit rejection of the husband's cohabitation contention; the trial court apparently determined that the evidence did not support a finding of cohabitation. We conclude that, based upon the disputed testimony and documentary evidence offered on that issue, the trial court acted within its discretion when it implicitly denied the husband's allegations of the wife's cohabitation.
The husband also contends that the trial court erroneously ordered him to pay the amount of $500 in monthly periodic alimony to the wife for three years. We note that "[t]he purpose of alimony is to preserve, as far as practical, the economic status quo the parties enjoyed during the marriage." Pickett v. Pickett, 723 So.2d 71, 74 (Ala.Civ.App.1998). The three-year time limit imposed by the trial court connotes that the award is one of rehabilitative alimony. Rehabilitative alimony is defined as "`a sub-class of periodic alimony'" that allows a spouse "`time to reestablish a self-supporting status.'" Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App. 2008) (quoting Jeffcoat v. Jeffcoat, 628 So.2d 741, 743 (Ala.Civ.App.1993)).
The husband admitted that his combined salary and retirement benefits totaled approximately $3,000 per month; at best, the wife was earning approximately $556 per month through her part-time employment. With the additional $500 per month in rehabilitative alimony, the wife will have approximately $1,589 in monthly income for the next three years. From that amount, she must establish a residence, pay utility bills, defray medical and dental expenses, pay to maintain and operate her motor vehicle, and pay her other necessary living expenses. The husband's main argument against an award of rehabilitative alimony was based on his contention that the wife could not receive any alimony because of her "cohabitation" with Blankenship. However, we have already affirmed the trial court's implicit rejection of the husband's contentions in that regard. In addition, the husband was awarded the marital residence, which was the primary marital asset of parties. Based upon the evidence of the parties' widely disparate salaries, the husband's superior level of work experience, and the relative assets of the parties, we conclude that the trial court did not err in awarding the wife rehabilitative alimony for three years.
The husband next asserts that the trial court erred in awarding the wife a portion of the husband's military-retirement benefits. The husband's brief cites Capone v. Capone, 962 So.2d 835 (Ala.Civ. App.2006), for the proposition that the wife failed to present sufficient evidence at trial to entitle her to any portion of the husband's military-retirement benefits. However, that case is distinguishable from the instant case on its facts.
In Capone, the record indicated "that the husband had been employed by the Army for ten years before his marriage to the wife." Capone, 962 So.2d at 840. Although the wife in that case offered a document indicating that if the husband retired at the time of trial, he would receive $3,924 in military-retirement benefits, this court, in the main opinion, concluded that the failure of the wife to demonstrate what portion of that amount had accrued during the marriageas opposed to the 10 years before the marriagerequired reversal of that judgment. Capone, 962 So.2d at 840-41. Additionally, in Brattmiller v. Brattmiller, 975 So.2d 359 (Ala.Civ.App.2007), one of this court's recent cases on point, although the wife attempted to present evidence *781 of the amount to which the husband would be entitled when he retired, she also failed to demonstrate what portion of that amount had accrued during the marriage.
In the instant case, however, the parties agreed that the husband's monthly military-retirement benefits totaled $1,269.68. Testimony by both parties established that the husband had been employed by the military during at least 18 years of the marriage, during which time the wife had worked only occasionally so that she could devote most of her time to raising the parties' child. The husband testified that he began receiving military-retirement benefits in the amount of $1,269.68 per month in 2003, several years before the parties separated. Based upon the undisputed testimony, we conclude that substantial evidence was adduced from which the trial court could have properly determined, as it did, that the present value of the husband's retirement benefits was $1,269.68 per month.[2] As noted previously, the division of marital property and an award of alimony are matters within the discretion of the trial court. See Ex parte Durbin, 818 So.2d 404, 408 (Ala.2001); see also McClelland, 841 So.2d at 1271-72.
The wife testified that the husband had been employed by the military only 2 or 3 years before the parties married in 1985; the husband testified that he had served in the military for about 21.5 years before retiring in 2003. The husband acknowledged that he had been receiving his military-retirement benefits at the time the parties separated in 2005. The wife requested one-half of the husband's monthly military-retirement benefits, because, she stated, she had never worked anywhere long enough to earn retirement benefits; however, the trial court awarded her 42% of the husband's monthly military-retirement benefits. A simple math calculation indicates that the trial court took into consideration the fact that the parties were married for approximately 18 years of the time that the husband had served in the military; that calculation reveals that 18 is 84% of 21.5. Because Ala.Code 1975, § 30-2-51(b), provides that retirement benefits acquired before marriage are not to be divided, the trial court could properly have awarded 42% of the total monthly amount paid to the husband by reference to that principle. That is the exact amount the trial court awarded the wife, which amounts to $532.98 per month; we conclude that the husband has not shown that the trial court's award of 42% of his monthly military-retirement benefits to the wife was clearly erroneous or an abuse of discretion.
The husband also asserts that the trial court's award of 50% of the funds in his 401(k) account to the wife was erroneous. However, his challenge is grounded on a violation of § 30-2-51(b)(1), Ala.Code 1975, which is a meritless contention because the parties had been married for the requisite 10 years.
Lastly, the husband asserts that the trial court erred in ordering him to pay a portion of the wife's attorney fees.
"`Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). "Factors *782 to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney." Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).'"
Lackey v. Lackey, 18 So.3d 393, 402 (Ala. Civ.App.2009) (quoting Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996) (emphasis added)). Based upon the fact that the wife had a substantially smaller income than the husband, who had earned a full military retirement and had been employed for several years in a well-paying job, and being mindful of the trial court's broad discretion in making attorney-fee awards, we cannot conclude that the trial court erred in ordering the husband to assist the wife by paying one-half of her attorney fees.
The trial court's divorce judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN and MOORE, JJ., concur in part, concur in the result in part, and dissent in part, with writings.
BRYAN, Judge, concurring in part, concurring in the result in part, and dissenting in part.
I join Judge Moore's writing on all points. However, I write separately because I conclude that the trial court erred in awarding the wife attorney fees for additional reasons not expressed in Part II of Judge Moore's writing; specifically, I conclude that the trial court erred in awarding the wife attorney fees because the wife neither requested attorney fees nor presented any evidence regarding her need for such assistance. See Cinader v. Cinader, 367 So.2d 487, 488 (Ala.Civ.App. 1979) ("[A] request [for attorney fees] must be made, and evidence of financial need and performance of the service shown before the authority of the court to grant such fees is properly invoked."); McKim v. McKim, 440 So.2d 562, 563 (Ala.Civ.App.1983) (reversing the trial court's judgment insofar as it awarded the father in that case attorney fees because the father had made no request for attorney fees and had presented no evidence "indicating a financial need ... for such assistance, nor a financial ability of the mother to pay it"); Kelley v. Kelley, 414 So.2d 126, 129 (Ala.Civ.App.1982) (reversing the trial court's judgment insofar as it awarded the plaintiff in that case attorney fees "[b]ecause of the absence of any request for an attorney's fee and [because] that issue was not tried by either express or implied consent of the parties ...."); see also Lewis v. Lewis, 416 So.2d 755, 759 (Ala.Civ.App.1982) (concluding that the trial court did not err by failing to award the wife in that case attorney fees because the wife had presented "no evidence ... as to the value of [her attorney's] legal services....").
MOORE, J., concurs.
MOORE, Judge, concurring in part, concurring in the result in part, and dissenting in part.
I fully concur with the main opinion that the trial court did not commit reversible error in awarding Sherri Lynn Campbell ("the wife") alimony. I concur in the result as to that part of the main opinion *783 affirming the trial court's award of a portion of the 401(k) account of Randy Campbell ("the husband") to the wife. As to the 401(k) account, the trial court awarded the wife only 50% of the amount accumulated in the account up to the date the parties separated on August 26, 2005. At that time, the parties had been married far more than the 10 years required by Ala. Code 1975, § 30-2-51(b)(1); thus, the husband's argument based on that statutory requirement is misplaced.
I respectfully dissent, however, from the main opinion's affirmance of those parts of the trial court's judgment awarding the wife a portion of the husband's military-retirement benefits and awarding the wife attorney fees.

I. Military-Retirement Benefits
The evidence indicates that the husband began accruing service time toward his eligibility for military-retirement benefits two to three years before the parties' married in 1985. On September 24, 2007, the date he filed the complaint for a divorce, the husband had been drawing $1,269.68 per month in military-retirement benefits for approximately four years. At trial, the wife requested a portion of the husband's military-retirement benefits, but she did not present any evidence as to the value of the benefits accrued before and during the parties' marriage. The trial court nevertheless awarded the wife 42% of the husband's military-retirement benefits "in accordance with the appropriate military policy."[3] The main opinion affirms that award based on the theory that the trial court calculated the percentage of time the parties had been married during the accrual period (18 out of 21.5 years, or approximately 84% of the accrual period) and awarded the wife 50% of the retirement benefits accrued during the marital period (50% x 84% = 42%).
Section 30-2-51(b), Ala.Code 1975, provides, in pertinent part:
"The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
"....
"(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage *784 including any interest or appreciation of the benefits."
According to § 30-2-51(b)(2), a trial judge may divide the value of retirement benefits one spouse is receiving on the date the divorce action is filed "provided ... that the judge divides only those retirement benefits acquired during the marriage...." Smith v. Smith, 836 So.2d 893, 899-900 (Ala.Civ.App.2002). When some portion of those retirement benefits were acquired before the marriage, a trial judge errs in awarding any portion of the retirement benefits without first deducting those benefits acquired before the marriage as well as any interest or appreciation attributable to those premarital benefits. See DuBois v. DuBois, 714 So.2d 308, 310 (Ala. Civ.App.1998).
In Applegate v. Applegate, 863 So.2d 1123 (Ala.Civ.App.2003), Mr. Applegate began accruing retirement benefits in 1974. In 1985, he married Mrs. Applegate, who later filed for a divorce in 2001. The trial court awarded Mrs. Applegate 23% of Mr. Applegate's retirement benefits. 863 So.2d at 1123. Mr. Applegate appealed the trial court's judgment on various grounds, including that the award of retirement benefits to Mrs. Applegate violated § 30-2-51(b)(2). 863 So.2d at 1124. This court reversed that portion of the trial court's judgment because Mrs. Applegate had failed to prove the portion of the benefits that were acquired before the parties' marriage. Id.
In Smith v. Smith, 964 So.2d 663 (Ala. Civ.App.2005), the parties had been married for 13 years when the divorce action was filed, but Mr. Smith had begun accumulating funds in various retirement accounts before the parties' marriage. Mrs. Smith presented evidence of the value of Mr. Smith's 401 (k) account on the date of the marriage, but she did not present any evidence of the value of Mr. Smith's other retirement accounts on the date of the marriage or of the interest or appreciation that had accrued on the premarital benefits after the parties' marriage. 964 So.2d at 669. This court determined that the trial court had erred in awarding Mrs. Smith any portion of the retirement accounts. 964 So.2d at 671.
In Wilkinson v. Wilkinson, 905 So.2d 1, 6-17 (Ala.Civ.App.2004) (Yates, P.J., concurring in the result), and Langley v. Langley, 895 So.2d 971, 976 (Ala.Civ.App. 2003) (Yates, P.J., concurring in part and dissenting in part), Presiding Judge Yates argued that a spouse seeking a portion of another spouse's retirement benefits can satisfy § 30-2-51(b)(2) merely by proving a "coverture or marital fraction," i.e., the percentage of time the marital period relates to the accrual period. This court has soundly rejected that argument by repeatedly holding that a spouse seeking a portion of another spouse's retirement benefits must prove the amount of the retirement benefits that accrued during the marital period. See Ford v. Ford, 3 So.3d 872 (Ala.Civ.App.2008); Sumerlin v. Sumerlin, 964 So.2d 47, 50 (Ala.Civ.App. 2007); Dunn v. Dunn, 891 So.2d 891 (Ala. Civ.App.2004); and McAlpine v. McAlpine, 865 So.2d 438 (Ala.Civ.App.2002).
That requirement applies equally to military-retirement benefits. In Piatt v. Piatt, 736 So.2d 632 (Ala.Civ.App.1999), Mr. Piatt retired from the military after 22 years of active service, during which he was married to Mrs. Piatt for only 14 years. 736 So.2d at 632. The trial court awarded Mrs. Piatt 45% of her husband's military-retirement benefits. This court reversed the judgment on the authority of § 30-2-51(b)(2) because the trial court had failed to deduct from the award those military-retirement benefits acquired before the marriage. 736 So.2d at 632-33. In Capone v. Capone, 962 So.2d 835 (Ala.Civ. *785 App.2006), an opinion authored by Presiding Judge Crawley in which Judge Murdock and Judge Bryan concurred in the result and Judge Thompson and Judge Pittman dissented as to the issue regarding the award of military-retirement benefits, the trial court awarded Mrs. Capone 25% of Mr. Capone's military-retirement benefits upon his receipt of the same. 962 So.2d at 836. The evidence showed that Mr. Capone had worked for the Army for over 30 years, approximately 10 of which predated the parties' marriage. Due to his length of service, Mr. Capone was eligible to retire and receive $3,924 per month in retirement benefits, but he had not yet retired. 962 So.2d at 837. Mrs. Capone failed to present any evidence as to the manner in which military-retirement benefits are calculated or any evidence as to the amount of the benefits that had accrued before and during the marriage. This court reversed the award, stating:
"Although the wife attempted to establish the amount of benefits the husband would receive if he retired at the time of trial, she did not present evidence of what portion of the husband's retirement benefits were accumulated during the parties' marriage. Her failure to do so requires us to reverse the portion of the judgment awarding retirement benefits to the wife, because the failure to present the necessary evidence concerning the portion of benefits acquired during the marriage prevents a trial court from exercising its discretion to award one spouse any portion of the retirement benefits of the other spouse."
962 So.2d at 840. Judge Pittman and Judge Thompson dissented on the ground that they believed the evidence was sufficient to determine the value of the military-retirement benefits and to sustain the award of 25% of those benefits to Mrs. Capone. 962 So.2d at 842. In a special writing concurring in the result, Judge Murdock wrote:
"The wife in this case was awarded 25% of the retirement benefits vested in the husband as of the date the complaint for a divorce was filed. Although I agree with the essential point made by Judge Pittman in his special writing as it relates to the issue of retirement benefits in this case, the award of such benefits appears to have been faulty in a respect not addressed by Judge Pittman's writing. Although there was testimony indicating that the husband, if he retired immediately, would be entitled to begin drawing $3,924 per month in retirement benefits, there was no showing as to what portion of those benefits accrued during the parties' 20-year marriage, as opposed to during the approximately 10-year period of military service by the husband prior to the marriage. This is an error of a nature which this court has held not to be remediable upon a remand."
962 So.2d at 841 (Murdock, J., concurring in the result) (first emphasis added).
In this case, the wife proved that, at the time of the filing of the divorce action, the husband was receiving $1,269.68 in monthly retirement benefits from his military service.[4] However, the wife did not present any evidence regarding the value of *786 the military-retirement benefits that had accrued before the parties' marriage or the value of the interest and appreciation on the premarital retirement assets, if any. The wife also failed to produce any evidence as to the method by which military-retirement benefits are calculated. In order to affirm the award of military-retirement benefits in this case, the trial court would have had to conclude that the husband accrued exactly the same amount of retirement benefits for each year of military service and that he was not entitled to any interest or appreciation on those benefits for any of those years. The wife utterly failed to prove either factually or legally that the husband's military-retirement plan operated in that fashion. Accordingly, the wife did not establish what portion of the $1,269.68 in monthly benefits represents benefits accrued before and during the marriage. By simply dividing the entire amount by the marital fraction and awarding the wife 50% of that percentage, the trial court did not comply with § 30-2-51(b)(2), and the judgment as to this issue should be reversed in accordance with the unbroken line of cases cited above. Therefore, I respectfully dissent.

II. Attorney Fees
I also dissent as to the award of attorney fees. The trial court simply awarded the wife 50% of her fees without knowing the total amount of the fees. Although our caselaw holds generally that in divorce cases a trial court may award fees without taking evidence as to the reasonableness of the amount of the fees, see Benton v. King, 934 So.2d 1062, 1069 (Ala.Civ.App.2005) (citing Ex parte James, 764 So.2d 557, 560 (Ala.1999) (plurality opinion)), I have not been able to find a single Alabama case, or a case from any other jurisdiction, in which that principle has been applied to a percentage award, as opposed to an award of a specific dollar amount. Logically speaking, a court cannot determine whether 50% of a total attorney fee is a reasonable award without knowing the total amount of the fee, regardless of whether reasonableness is measured by evidence presented to the court or based on the court's own experience and insight. We have approved awards of a percentage of a recovery for the client, i.e., a contingency-fee award, when the court had information regarding the customary nature of such an award, see Benton, supra, but that award differs materially from an award of a percentage of an unknown amount of accrued attorney fees. A trial court is vested with broad discretion in determining the amount of attorney fees to be awarded in a divorce action, see Murphree v. Murphree, 579 So.2d 634, 637 (Ala.Civ.App.1991), but, in my opinion, it exceeds that discretion when it makes a percentage award without knowing the total amount of the fees.
BRYAN, J., concurs.
NOTES
[1] Peoples testified that he had determined that the wife was living at the home of a man named Mike Blankenship.
[2] If the trial court had decided to reduce the wife's award to a lump sum instead of awarding her a portion of the monthly retirement benefit, reference to standard mortality and annuity tables would have been proper. See generally Ala.Code 1975, § 35-16-1 et seq., and Miller v. Haithcock, 599 So.2d 37, 38 (Ala.Civ.App.1992).
[3] The record contains no reference to that policy other than the husband's testimony regarding the Uniformed Services Former Spouses' Protection Act ("the USFSPA"), 10 U.S.C. § 1408. The USFSPA merely allows a court to treat "disposable retired pay ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c). The purpose of the USFSPA is to

"to remove the federal pre-emption found to exist by the United States Supreme Court [in McCarty v. McCarty, 453 U.S. 210 (1981),] and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisable [sic]. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution."
Senate Report No. 97-502, 97th Congress, 2d Session (July 22, 1982), 1982 U.S.C.C.A.N. 1595, 1611; see also Ex parte Vaughn, 634 So.2d 533, 536 (Ala. 1993) ("It is obvious that the USFSPA does not mandate, but rather, authorizes, state courts to consider military retirement benefits as marital property, and, thus, subject to equitable division."). Military-retirement benefits are divisible in Alabama only in accordance with Ala.Code 1975, § 30-2-51(b). See, e.g., Brattmiller v. Brattmiller, 975 So.2d 359 (Ala.Civ.App.2007).
[4] By proving the current amount of military-retirement benefits the husband was receiving at the time of the filing of the divorce action, the wife arguably complied with that portion of § 30-2-51(b) requiring the wife to prove "the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed." However, that does not mean that she satisfied her burden of proof under the remaining portions of § 30-2-51(b). The main opinion seems to be confusing those separate requirements.