PITTMAN, Judge.
Hannah Caroline Crowder (“the wife”) appeals from a judgment of the Talladega Circuit Court divorcing her and Donnie Steve Crowder (“the husband”) that, in pertinent part, awarded her monthly periodic alimony of $300, alimony in gross of $55,000, various items of personalty, one of four parcels of real property owned by the parties, and an equal share of the proceeds from the sale of a second parcel. That judgment was entered after an ore tenus proceeding on the husband’s complaint that, as amended, had sought a divorce on the grounds of incompatibility and the wife’s alleged adultery (as well as the wife’s divorce counterclaim alleging incompatibility); although the record does not contain a transcript of that proceeding because of a computer malfunction, the parties have prepared and the trial court has approved a statement of the evidence under the provisions of Rule 10(d), Ala. R.App. P., and the evidentiary exhibits admitted into evidence appear in the clerk’s record.
The wife asserts that the trial court erred in its periodic-alimony award and its property division (including that court’s election to award the husband the entire remaining balance of his individual retirement account (“IRA”)). Our review of the judgment as to those issues is deferential:
“Initially, we note that a trial court’s determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. On appeal, issues of alimony and property division must be considered together, and the trial court’s judgment will not be disturbed absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Some factors that the trial court should consider in dividing marital property and setting alimony payments include ‘(1) the earning ability of the parties; (2) their probable future prospects; (3) their age, sex, health and station in life; (4) the duration of the marriage; and (5) the conduct of the parties with reference to the cause of divorce.’ The division of property in a divorce proceeding need not be equal, but must be equitable.”
Schado v. Schado, 648 So.2d 1169, 1170 (Ala.Civ.App.1994) (citations omitted; quoting Echols v. Echols, 459 So.2d 910, 911-12 (Ala.Civ.App.1984)). In addition to the factors cited in Schado, the trial court may also consider “the source, value, and type of property owned” by the parties, and it is always to be remembered that, in this area of law, “[ejach case is decided on its own facts and circumstances.” Matejka v. Matejka, 647 So.2d 778, 780 (Ala.Civ.App.1994). Finally, in reviewing trial-court determinations based on conflicting ore tenus evidence, this court is to view the evidence in a light most favorable to the prevailing party. McClellan v. McClellan, 959 So.2d 658, 661 (Ala.Civ.App.2006).
The statement of the evidence appearing in the record yields the following facts. The parties were married in 1987 and separated in May 2011; one child was born of their marriage, who is currently 18 years old and whose custodial and support arrangements are not at issue. The husband, who is currently 64 years old, receives $1,632 a month in Social Security retirement benefits and has experienced back-pain symptoms and skin cancer; the wife, who is 54 years old, receives $716 per month in disability benefits and has also experienced certain unspecified health problems.
*138 During the marriage, the parties acquired various tracts of real property, including (a) a lot in Childersburg valued at between $19,000 and $40,000 that was titled in both parties’ names (“the river lot”); (b) a 10-acre parcel in Fayetteville valued at between $120,000 and $200,000 that was titled in both parties’ names and upon which two mobile homes had been placed (“the Fayetteville parcel”); (c) a lot in Florida valued at $7,000 (“the Florida lot”); and (d) a 34-acre parcel in Alma, Georgia, valued at $70,000 on which a residence was located (“the Georgia parcel”). Of those properties, only the title to the Georgia parcel, which had passed to the husband by inheritance from his mother, was held solely in the husband’s name during the marriage; however, the statement of the evidence indicates that the wife made no financial contributions to the Fayetteville parcel, while the husband used $62,000 of inherited funds to purchase one of the mobile homes on that property. Also, during the marriage, the husband opened an IRA that, at the time of the parties’ separation, had been worth approximately $264,000 but that was worth only $107,000 at the time of trial;[1] the source of the moneys in that account included the husband’s wages, his employer’s matching funds, and some funds inherited by the husband. The reduction in the value of the IRA largely stemmed from the husband’s loss of his job of 32 years’ duration in September 2011 because of a reduction in force and his subsequent withdrawals from that account to satisfy marital debts and living expenses and to pay pendente lite spousal support of $500 per month, as well as to purchase automobiles for himself and the parties’ child.[2]
Regarding the conduct of the parties relative to the divorce, the statement of the evidence indicates that the parties engaged in an argument at a party in April 2011 regarding the wife’s alleged infidelity, with the husband accusing the wife of being engaged in an ongoing relationship with another man. The parties’ child testified that in May 2011, the month of the parties’ separation, he had seen the wife kissing Jim Bush; further, upon the wife’s leaving the marital home, she moved into Bush’s home, although she introduced into evidence certain checks that were offered to support the proposition that she had paid Bush rent moneys during their cohabitation.
Viewing the evidence in a favorable light to the trial court’s judgment, as mandated by McClellan, supra, a comparison of the values of the marital property awarded to each spouse does not reveal an inequitable favoring of the husband. Although the judgment vests in the husband real property and interests in financial accounts that the trial court could have found from the evidence to be worth $317,000, while the wife was awarded real *139 property interests that the trial court could have found from the evidence to be worth $27,000 plus alimony in gross of $55,000 (totaling $82,000), not all the real-property assets were necessarily subject to division. The wife argues that the Georgia parcel (which was titled solely in the husband’s name) and the Fayetteville parcel were used for the common benefit of the parties during the marriage and were subject to division, notwithstanding the husband’s having received the Georgia parcel via family inheritance from his mother and having used inherited money to significantly enhance the value of the Fayetteville parcel. However, as we held in Harmon v. Harmon, 928 So.2d 295, 300 (Ala.Civ.App.2005), there is no requirement under our law that a trial court deem property acquired by inheritance by one spouse to be divisible. Considering only the Florida lot, half the value of the lake lot (which was ordered sold and the proceeds divided), that portion of the value of the Fayetteville lot not attributable to improvements secured by the husband’s inheritances, the alimony-in-gross award, and the IRA, the wife received approximately 30% of the divisible property, while the husband received assets amounting to approximately 70% of the divisible property-
In alleging that the property division was inequitable, the wife neglects to address the issue of her conduct as bearing upon the judgment, choosing simply to note that the trial court did not make an express finding of fault in its judgment. However, “[a] court may consider fault when making a division of property, even if the divorce was granted on grounds of incompatibility.” Lutz v. Lutz, 485 So.2d 1174, 1176 (Ala.Civ.App.1986). In light of the evidence of the wife’s adultery (see generally Stephens v. Stephens, 233 Ala. 178, 170 So. 767 (1936) (holding that adultery may be inferred from circumstances leading to it as a necessary conclusion, such as from the general cohabitation of the parties)), the more advanced age of the husband relative to the wife, the absence of any clear indication in the record of a more significant medical history on the part of either party, and the wife’s lack of any significant economic contribution to the marital assets, we cannot conclude that the trial court erred in awarding a higher proportion of the divisible marital assets to the husband. Similarly, we perceive no breach of the trial court’s discretion in awarding the husband his IRA, especially in light of his prior use of moneys from that account to discharge marital debts so as to benefit both parties to the marriage and in light of the alimony-in-gross award to the wife that amounts to approximately half of the remaining value of that account.
The final issue raised by the wife concerns the equity of the trial court’s $300-per-month periodic-alimony award. The wife claims that her alimony income plus $716 per month in benefit payments will leave her unable to meet her living expenses, which she claims will amount to $1,401 per month. However, the expenses actually itemized on the evidentiary exhibit 'upon which the wife relies actually amount to the sum of only $1,251; further, the trial court could have deemed some of the listed expense items (such as $325 for “grooming,” “donations,” “gifts,” and “[m]iscellaneous and spending money” for, among other things, “movies”) to not amount to necessities. Further, to the extent that the wife claims inequity because the husband ostensibly experienced an increase in average monthly income after the parties separated, she bases that claim upon her comparison of the parties’ 2010 joint income-tax return and the husband’s 2011 income-tax return; upon closer examination, those returns show the *140 source of the “increase” to have been taxable pension distributions (that came, one may infer, from the husband’s IRA) rather than the husband’s wage income from his former employment, which actually decreased from 2010 to 2011. In addition, as we have noted in discussing the property division, the husband lost his long-term employment during the pendency of the action, and his advanced age does not tend to support the wife’s apparent contention that the husband is capable of earning anywhere close to the same total compensation that he earned in 2011. Based upon those factors, as well as the evidence of the wife’s adulterous conduct, we conclude that the trial court acted within its discretion in making its periodic-alimony award.
In light of the foregoing facts and authorities, the trial court’s judgment is due to be affirmed.
AFFIRMED.
THOMAS and DONALDSON, JJ., concur. .
THOMPSON, P.J., and MOORE, J., dissent, with writings.

. To the extent that the wife, in her argument directed to her second issue, claims inequity in the property division based upon the higher value of the IRA at the time of the separation compared to the time of the divorce (and to the extent that Presiding Judge Thompson, in his dissent, accepts that argument), we note that this court has held that a trial court does not err in basing its valuation of a retirement account that may be divisible under Ala.Code 1975, § 30-2-51, upon its value at the time of the entry of the divorce judgment rather than at the time of the parties' separation. See Robicheaux v. Robicheaux, 731 So.2d 1222, 1224 (Ala.Civ.App.1998).

. An additional financial account at Heritage South Credit Union having a balance of approximately $10,000 was not addressed in the divorce judgment. However, as the wife acknowledges, the parties retain their respective interests in that account by virtue of the silence of the trial court as to that account. See Walker v. Walker, 990 So.2d 927, 929 (Ala.Civ.App.2008).