Rel: January 9, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

―――――――――――――――

### CL-2025-0299

―――――――――――――――

### Susan Nixon Bailey

### v.

### David Keith Nixon

### Appeal from Russell Circuit Court
### (DR-12-900036.03)

FRIDY, Judge.

Susan Nixon Bailey ("the former wife") appeals from a judgment of the Russell Circuit Court ("the trial court") finding David Keith Nixon ("the former husband") in contempt, awarding her a monthly payment of $252.20 from the amount the former husband receives as a retirement

benefit based on his work as a firefighter for the City of Columbus, Georgia ("the city"), and awarding her an arrearage in the amount of $6,052.80. For the reasons set forth herein, we reverse the judgment and remand the case to the trial court with instructions.

Background

The parties married on April 9, 1992, and divorced in March 2013. When they divorced, the parties reached a mediated agreement that the trial court incorporated into the divorce judgment. Under the divorce judgment, the trial court awarded the former wife "a portion of the [h]usband's retirement with the City of Columbus ... calculated as 50% of the retirement proceeds accumulated during the course of the marriage and terminating as of the date of the issuance of the final decree of divorce."

On July 27, 2023, the former wife filed a complaint seeking to hold the former husband in contempt, alleging that the husband had retired in November 2022 but had failed to pay her the 50% portion of his retirement benefits to which she was entitled under the divorce judgment. She sought payment of her share of those benefits retroactive to November 2022, an award of attorney's fees, and other relief. The

former husband filed an answer denying the allegations of the former wife's complaint. He later amended his answer to assert that his retirement plan was a defined-benefit pension that was not vested at the time of the entry of the divorce judgment and that it was therefore not subject to division.

The trial court held a trial on the former wife's contempt complaint on December 2, 2024. The former husband's counsel conceded that the former husband owed the former wife a portion of his retirement pension, and the dispute concerned only the amount that the former husband was to pay the former wife each month. The former wife's counsel maintained that, upon the former husband's retirement, the former wife "was to receive the full benefit of [the former husband's] retirement, minus the number of months that he earned after the divorce."

The trial court explained that the language in the divorce judgment -- "accumulated during the course of the marriage and terminating as of the date of the issuance of the final decree of divorce" -- could be read in two ways: either (1) that the former wife was entitled to 50% of the portion of the retirement benefits accumulated during the marriage, payable when the former husband retired, or (2) that the former wife's

interest was limited to the value of those benefits as of the date of the entry of the divorce judgment, which would result in only a few hundred dollars per month. The trial court noted that the parties likely had not intended for the former wife to receive only a few hundred dollars each month after she relinquished claims to two other retirement accounts.

The former husband testified that he was forty-five years old at the time of the divorce and that he retired at age fifty-five in November 2022, after more than thirty-two years of service with the city. He confirmed that he currently received $2,746 per month in retirement benefits. He said that he did not recall what his salary was in 2013, but he testified that he earned approximately $50,000 in 2022, and, he said, his 2022 W-2 form reflected $62,880 in income as a result of his having worked overtime. The former husband testified that, under the city's pension plan, employees cannot retire until age fifty and that early retirement before age fifty-five results in a 6% reduction per year in the retirement benefit, which, he said, would yield only 30% of the unadjusted amount if retirement occurred at age fifty. He testified that the 6% adjustment applied under both the plan that was in effect when he began working for the city and the plan that became effective on July 1, 2012.

The former husband testified that he had understood the divorce judgment to require him to pay half of the retirement benefits accumulated during the marriage as a lump sum -- half of $1,600 -- rather than monthly payments. He testified that, using the formula the city used to calculate pensions, he had calculated that his unadjusted retirement benefit at the time of the entry of the divorce judgment would have been $1,916.82 per month. He said that, had he retired at age fifty, applying the 30% early-retirement provision, he would have received $575.04 per month, i.e., 30% of $1,916.82, and that the former wife's 50% share would be $261.66 per month -- adjusted to account for the approximately two years that they were not married when he began his employment with the city -- based on the twenty-one years of service that he had during the marriage. He testified that he was willing to pay the former wife $261.66 per month.

The former wife testified that, during mediation, she had waived alimony in exchange for receiving lifetime monthly pension payments to begin upon the former husband's retirement. She said that, because the former husband was not retired when they divorced, the amount of those monthly pension payments could not be determined at that time. When

5

she learned of the former husband's retirement, she said, she contacted the city and learned through discovery that he was receiving $2,746 per month in retirement benefits based on roughly thirty years of service. She said that she prepared an exhibit showing her calculation of what she believed to be a fair division of the monthly benefits, seeking 40% rather than 50% to credit him for his 109 months of postdivorce service. She said that she was requesting $1,098 per month and $26,352 in arrearages for the twenty-four months that had passed since his retirement, along with attorney's fees.

The former wife explained that, based on her understanding of the pension plan as described on the city's Web site, the plan calculates retirement benefits by averaging the employee's three to five highest annual salary amounts -- although she was unsure which number of years the plan uses -- and then provides 60% of that average as the retirement benefit. She testified that the former husband had told her during the marriage that he would receive 60% of his salary under the terms of the plan that was in effect when he began working.

Richard Lee Chancey, the former wife's former attorney, testified that he represented her during the 2013 mediation. He stated that he

believed that the parties had intended to divide the former husband's retirement benefits accumulated during the marriage. He testified that, as he recalled, the parties had intended for the former wife to receive a fractional share of the monthly retirement benefits that the former husband would have received had he retired as of the date of the entry of the divorce judgment and that the trial court's calculation should be based on that amount and not on the fractional share of the monthly retirement benefits that the former husband was actually receiving. He explained that the exact amount was undetermined in 2013 because the former husband had not yet retired, but, he said, the parties had anticipated that the calculation would occur upon the former husband's actual retirement. Chancey corroborated the former wife's testimony indicating that, in exchange for receiving lifetime monthly pension payments upon the former husband's retirement, she had not sought monthly spousal support. He acknowledged that the agreement contained no safeguard in case the former husband died before he vested in the pension plan. He confirmed that the former husband's pension benefits increased with his years of service.

Cynthia Holliman, a senior pension-plan administrator with the city, testified that the former husband participated in the city's public-safety pension plan, which, she said, had required five years of service for vesting before July 1, 2012, and ten years thereafter. She testified that the former husband was vested at the time of the entry of the divorce judgment because he had worked the required 120 months, but, she explained, he was not eligible to receive benefits at that time because he was only forty-five years old. She testified that the former husband had accumulated an unadjusted retirement amount of $1,681 per month between April 9, 1992, and March 13, 2013, which, she stated, represented the amount that he would have received, after reductions, if he had retired at the earliest eligible age of fifty. She clarified, however, that he would not have received that amount had he retired immediately upon the entry of the divorce judgment because he was not yet eligible for retirement. Holliman further testified that the former husband continued working for at least ten years after the entry of the divorce judgment, which, she confirmed, increased his final benefits.

The trial court noted that the term "retirement [benefits] accumulated" as set forth in the divorce judgment did not specify the

8

amount of the monthly pension that the former husband would have actually received. Holliman confirmed that the $1,681 figure represented only the unadjusted accumulated amount as of the entry of the divorce judgment and that to receive full, unreduced benefits the former husband was required to work to age fifty-five, with at least twenty-five years of service.

The former wife submitted the former husband's pension plan into evidence. The plan's early-retirement provision states, in pertinent part:

> "If payment of an Early Retirement Pension commences prior to the date the Member both attains age fifty-five (55) and would have attained twenty-five (25) years of Vesting Service, the amount of the Pension shall be reduced by 0.5 of 1% (.005) for each full calendar month that commencement of the Early Retirement Pension precedes the later of the date the Member would have attained age fifty-five (55) and the date he would have attained twenty-five (25) years of Vesting Service had he continued employment with the Government."

Under this provision, for every year the former husband retired before the age of fifty-five, he would have experienced a reduction of 6% in his retirement benefits. As noted earlier, he could not have retired before he turned fifty years old, and, under this provision, had he retired at fifty, he would have experienced a 30% reduction in his retirement benefits. However, as noted above, he did not retire before he reached the age of

9

fifty-five, and, as a result, he did not experience an early-retirement reduction to his retirement benefits.

The trial court directed the parties to submit caselaw or other supporting materials within seven days of the hearing to inform the trial court of their respective positions regarding the appropriate calculation to be used to determine the former wife's share of the former husband's pension. On December 9, 2024, both parties submitted post-hearing briefs. The former husband argued that the former wife was entitled to 50% of the retirement benefits accrued as of the entry of the divorce judgment, reduced to 30% of that amount by the early-retirement reduction, resulting in a payment to the former wife of $252.20 per month (50% of 30% of $1,681.30). The former wife argued that the judgment entitled her to 50% of the former husband's retirement benefits accumulated during the marriage, payable upon his retirement, and that the trial court had authority to clarify but not to modify the divorce judgment. She sought $1,098 per month, $26,352 in arrearages, attorney's fees, and designation as a survivor beneficiary. Alternatively, she maintained that, even under the former husband's evidence, her

share of his pension should be at least 50% of $1,681, or $840.50 per month.

On December 22, 2024, the trial court found the former husband in contempt for failing to pay the former wife any portion of his retirement benefits, as required by the divorce judgment. The trial court found that, according to Holliman's testimony, the former husband's unadjusted monthly retirement benefits as of March 13, 2013, would have been $1,681.30 and that his early-retirement amount at that time would have been 30% of that amount, or $504.39 per month. The trial court determined that, because the former wife was entitled to 50% of that amount, she should receive $252.20 per month. The trial court further found that the former husband had not paid the former wife any portion of his retirement benefits since his November 2022 retirement, held him in contempt, calculated an arrearage totaling $6,052.80, and ordered him to pay that amount within forty-five days, along with the former wife's attorney's fees and costs.

On January 21, 2025, the former wife moved to alter, amend, or vacate the judgment or, alternatively, for a new trial, asserting that the trial court had improperly modified the property division in the divorce

11

judgment applying what she called a "theoretical" early-retirement penalty that reduced her share to 50% of only 30% of the former husband's accumulated benefits. The former husband opposed the motion on February 25, 2025, arguing that the trial court had properly interpreted the divorce judgment and had correctly calculated the marital-period benefits.

On March 10, 2025, the trial court denied the former wife's postjudgment motion, and she filed a timely notice of appeal.

## Standard of Review

> "'[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So. 2d 122, 125 (Ala. 2002). '"The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment."' Waltman v. Rowell, 913 So. 2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So. 2d 77, 79 (Ala. 1985)). 'Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts.' Id."

Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005). "'Questions of law are reviewed de novo'"; moreover, "'[t]his court reviews de novo a trial court's determination with respect to whether an agreement incorporated into a

divorce judgment is ambiguous.'" Gore v. White, 96 So. 3d 834, 841 (Ala. Civ. App. 2012) (citations omitted).

## Analysis

At the outset, we address two of the former husband's arguments. First, the former husband argues that the trial court was wrong to hold him in contempt for failing to pay the former wife a portion of his retirement benefits for the two years that elapsed between his retirement and the entry of the final judgment in this action. He asserts that, because the former wife had never obtained a Qualified Domestic Relations Order, he was unable to determine the amount that he owed her and did not have an opportunity to comply with his obligation to pay her that amount, and he concludes that, as a result, the trial court lacked subject-matter jurisdiction. However, the former husband did not file a cross-appeal challenging the judgment and, therefore, has not properly placed before this court the question whether the trial court properly held him in contempt. See Beaty v. Head Springs Cemetery Ass'n, 413 So. 2d 1126, 1128 (Ala. 1982) ("In the absence of taking an appeal, an appellee may not cross-assign error."). Further, we fail to discern how the former

husband's argument raises an issue of the trial court's subject-matter jurisdiction.

The former husband next argues that this court should affirm the trial court's judgment because the three exhibits that the trial court admitted at trial are not contained in the record on appeal. We note, however, that it is not uncommon for trial exhibits to not accompany a record on appeal that is transmitted to this court, and, when that happens, our court normally reaches out to the trial-court clerk's office and asks that office to transmit the exhibits. We did so in this case. The trial-court clerk's office transmitted two of the exhibits, and, regarding the exhibit that that office was unable to locate -- a tax document that appears to have had no bearing on the trial court's judgment and, as will become apparent in this opinion, has no bearing on the resolution of this appeal -- this court ordered the parties to supplement the record on appeal with a copy of that exhibit. This court has now received a supplemental record on appeal containing that exhibit. Thus, we find no basis in this argument for affirming the trial court's judgment.[1]

---

[1]As part of this argument, the former husband contends that the former wife failed to put into evidence the divorce judgment containing the retirement-benefits paragraph at issue in this case. However, the

14

Turning to the former wife's contentions, the former wife argues that the trial court improperly modified the divorce judgment by imposing a "theoretical early-retirement penalty" that reduced her share to 50% of only 30% of the former husband's accumulated retirement benefits at the time of the entry of the divorce judgment. She asserts that the divorce judgment unambiguously awarded her one-half of the former husband's total retirement benefits accumulated during the parties' marriage, without any reduction, and that the trial court lacked authority to alter that division. The former wife further argues that, because the former husband retired at age fifty-five, no early-retirement penalty applied and that what she calls the trial court's 70% reduction of the amount the former husband would have received as a pension on the date of the entry of the divorce judgment lacked evidentiary support. She

former wife's complaint in this action, at paragraph three, recited that paragraph from the divorce judgment, and the former husband admitted the allegations of paragraph three of the former wife's complaint in both his answer and his amended answer. Moreover, the former wife's attorney read the pertinent paragraph from the divorce judgment to the trial judge at the beginning of the trial, and the former husband did not argue that she had read it incorrectly. Finally, the trial court quoted in its final judgment the relevant portion of the divorce-judgment paragraph at issue, and neither party has argued that the trial court misquoted that paragraph.

15

also contends that the trial court miscalculated the unadjusted retirement amount, resulting in an undervaluation of her monthly share and arrearage.

"Judgments are to be construed like other written instruments." Moore v. Graham, 590 So. 2d 293, 295 (Ala. Civ. App. 1991). The same rules that govern the construction and interpretation of contracts apply to the interpretation of judgments. Id. A settlement agreement that is incorporated into a divorce judgment is contractual in nature and is interpreted in the same manner as any other written instrument. Reeves v. Reeves, 363 So. 3d 996, 1004 (Ala. Civ. App. 2021). The court must give the words of the agreement their ordinary meaning and derive the parties' intent from the plain language of the document. Id. When an agreement's terms are clear and unambiguous, the court must enforce the agreement as written. Id. An ambiguity exists when the language is susceptible to more than one reasonable interpretation; however, "'[j]ust because the parties allege different constructions of an agreement, it does not necessarily mean that the agreement is ambiguous.'" Id. (citation omitted).

The divorce judgment in this case unambiguously provides that the former wife "shall be awarded a portion of the [former] husband's retirement with the City of Columbus ... <u>calculated as 50% of the retirement proceeds accumulated during the course of the marriage and terminating as of the date of the issuance of the final decree of divorce</u>, with said proceeds to be paid directly to the [former] wife upon the retirement of the [former] husband." (Emphasis added.) The divorce judgment expressly entitles the former wife to one-half of the retirement benefits that the former husband accumulated during the marriage through the date of the entry of the divorce judgment and directs that payment of that portion of the retirement benefits is to begin when the former husband retires. Although the parties offer conflicting interpretations of this provision, their disagreement alone does not create an ambiguity. <u>See</u> <u>Reeves</u>, 363 So. 3d at 1004. As our supreme court has held, courts "will not insert ambiguities into a contract by 'strained and twisted meaning where no such ambiguities exist.'" <u>ERA Commander Realty, Inc. v. Harrigan</u>, 514 So. 2d 1329, 1334 (Ala. 1987) (quoting <u>South Cent. Bell Tel. Co.</u>, 466 So. 2d 928, 931 (Ala. 1985)).

The trial court erred in its interpretation of the phrase "accumulated ... and terminating as of the date of the issuance of the final decree of divorce." In effect, the trial court interpreted that language to mean that the former husband's pension should be valued as if he had retired on the date of the entry of the divorce judgment. It was wrong to do so. Rather, the plain meaning of that phrase is that the period of the accumulation of the former husband's benefits that would be used to calculate the former wife's portion of the former husband's benefits would begin when the parties married and end on the date of the entry of the divorce judgment.[2] Put another way, the phrase sets an endpoint for the accumulation of the former husband's retirement benefits to which the former wife would be entitled upon his retirement; it does not call for a

---

[2]It makes sense that the parties' agreement and the divorce judgment would set the date for the end of the period of accumulation for measuring the portion of the former husband's retirement benefits to which the former wife would be entitled given that a trial court generally has discretion in determining whether that period should end when the divorce complaint was filed or when the final judgment of divorce was entered. See Crowder v. Crowder, 166 So. 3d 135, 138 n.1 (Ala. Civ. App. 2014) ("[W]e note that this court has held that a trial court does not err in basing its valuation of a retirement account that may be divisible under Ala. Code 1975, § 30-2-51, upon its value at the time of the entry of the divorce judgment rather than at the time of the parties' separation.").

18

calculation of the former wife's portion of the benefits as if the former husband had retired on that date. Indeed, taking the trial court's interpretation to its logical conclusion, because the former husband was not entitled to receive retirement benefits at the time of the entry of the divorce judgment (he was only forty-five years old and receipt of those benefits could not have started until later), the former wife would not have been entitled to any of the former husband's retirement benefits. Such a result does not reflect the parties' intent, because it would render the award to the former wife meaningless. Because courts must construe contracts to avoid unreasonable results, the trial court's interpretation cannot stand. See International Harvester Co. v. Bostick's Int'l, Inc., 365 So. 2d 84, 87 (Ala. Civ. App. 1978).

The trial court compounded its error in interpreting the divorce judgment by improperly imposing an early-retirement penalty on the portion of the retirement benefits the former wife was due to receive. The trial court's reasoning appears to have been that, because the former husband had vested in the pension plan by the time the divorce judgment was entered, if he had retired at that time, he would have begun receiving his pension when he turned fifty years old. Had he begun receiving his

19

retirement benefits at that time, the amount he would have received would have been reduced by an early-retirement penalty that was imposed by the retirement plan on benefits drawn before age fifty-five.

However, the former husband did not retire before the age of fifty-five, and no early-retirement penalty has ever been applied to his retirement benefits. The divorce judgment did not authorize the trial court to impose a theoretical early-retirement penalty on the former wife's share when the former husband did not, in fact, retire early. The plain language of the divorce judgment entitles the former wife to one-half of the retirement benefits accumulated during the marriage through the date of the entry of the divorce judgment and affords the trial court no discretion to impose theoretical adjustments or penalties on that amount. Therefore, the trial court erred when it treated the former husband as if he had retired at age fifty, five years before he actually retired, and imposed on the former wife's portion of his retirement benefits an early-retirement penalty.[3] On remand, the trial court should

---

[3]Furthermore, the early-retirement penalty the trial court imposed was far higher than the pension plan called for. The trial court incorrectly determined that an employee retiring at age fifty would receive only 30% of his or her retirement benefits. However, as noted above, the pension plan imposes a penalty of half of 1% per month, or 6% per year, for early

enter a new judgment that awards the former wife half of the portion of the former husband's retirement benefits earned during the marriage, with the portion earned during the marriage being calculated as commencing when the marriage began and ending at the time of the entry of the divorce judgment.

The former wife also contends that the trial court's determination of the arrearage was incorrect because it incorrectly determined the amount of the former husband's monthly retirement benefits to which she was entitled. Because we agree that the trial court erred in its calculation of the portion of the former husband's retirement benefits to which she was entitled, we agree with the former wife that the trial court erred in its calculation of the arrearage. On remand, the trial court should award the former wife a new arrearage amount based on its amended calculation of the amount of the former husband's retirement benefits to which the former wife is entitled.

---

retirement. Thus, if the former husband retired five years early, at age fifty, he would have incurred a 30% reduction in his retirement benefits such that he would have received <u>70</u>% of his retirement benefits, not <u>30</u>% of his retirement benefits.

Conclusion

The trial court miscalculated the amount of the former husband's retirement benefits to which the former wife was entitled, and, as a result, it miscalculated the arrearage the former husband owed to the former wife. For this reason, the trial court's judgment is reversed and the cause is remanded for the entry of a new judgment consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson and Bowden, JJ., concur.

Edwards, J., concurs in the result, without opinion.